**PREFERRED RISK MUTUAL INSURANCE COMPANY, a corporation,**
Plaintiff,

v.

**Clarence E. PETERSON, Dennis Peterson, Timothy Hammer, a minor, and Clyde A. Hammer, his father and natural guardian, Rosemary Theresa Peterson, a minor, Donna Mae Walker, and Mattie Nelson, by her Guardian Ad Litem, Ernest O. Nelson, Jr., and Robert E. DeWolff, Defendants.**

No. 4–58 Civ. 410.

United States District Court
D. Minnesota,
Fourth Division.

Aug. 28, 1959.

Sheldon D. Karlins and Sachs, Karlins, Grossman & Karlins, Minneapolis, Minn.; for plaintiff.

Richard J. Parish, Robbinsdale, Minn., for defendants Clarence E. Peterson and Dennis Peterson.

Roald G. Johnson, Minneapolis, Minn., for Clyde A. Hammer, natural guardian of Timothy Hammer.

Wyman Smith, Minneapolis, Minn., for defendants Clarence E. Peterson, as natural guardian for Rosemary Peterson; Ernest O. Nelson, Jr., as guardian ad litem for Mattie Nelson; and Donna Mae Walker.

Clark MacGregor and King & MacGregor, Minneapolis, Minn., for defendant Robert E. DeWolff.

NORDBYE, District Judge.

The Preferred Risk Mutual Insurance Company seeks a declaratory judgment establishing that it shall not be liable on any claims arising out of a certain automobile accident. It alleges that the agreement by its insured, a défendant herein, to cooperate with it in the conduct of legal proceedings resulting from such an accident has been breached. The plaintiff now moves for summary judgment based upon the affidavits and depositions on file, the salient facts therein appearing as follows.

Clarence E. Peterson, a resident of Minneapolis, Minnesota, is the named insured of an automobile liability insurance policy issued by the plaintiff. The provision in that policy upon which the plaintiff relies as a basis for this action states, in part, that the "insured shall cooperate with the company * *. * in the conduct of any legal proceedings in connection with the subject matter of this insurance." By its terms, the policy also covers the members of the insured's family while operating a certain Ford automobile. On July 11, 1958, Dennis Peterson, the minor son of the insured, Clarence Peterson, while driving the Ford automobile, collided with an automobile owned and operated by Robert E. DeWolff in Minneapolis. Riding in the Peterson automobile as passengers were Rosemary Peterson, the minor daughter of the insured, Timothy Hammer and Mattie Nelson, also minors, and Donna Mae Walker. All of the above-named persons are defendants in this action.

All of the passengers in the Peterson automobile sustained personal injuries and were taken to hospitals in the Minneapolis area. Although Dennis Peterson was not injured, he received a summons to appear in Juvenile Court for a traffic law violation that may have contributed to cause the collision. The insured, Clarence Peterson, was promptly notified of the accident. He contacted the plaintiff insurance company within a few hours thereafter.

Rosemary Peterson had been very friendly with Donna Mae Walker, the latter having lived at the Peterson home for a few weeks after her release from the hospital following this accident, and she has since been a roommate of Miss Peterson elsewhere in the Minneapolis area. Mattie Nelson, at the time of the accident and at all other times herein relevant, was "going steady" with Dennis Peterson and was also on friendly terms with his father, the insured. Miss Nelson also stayed at the Peterson home for a few days following her release from the hospital after the accident.

Gerald H. Hanratty, a Minneapolis attorney, investigated the accident for the plaintiff. He went to the hospitals and talked to the passengers. He also questioned and obtained statements from Dennis and Clarence Peterson and the other witnesses within the few days im-

mediately following the accident. During this period, Hanratty indicated to the insured that the plaintiff insurance company might have a defense on the policy based on alleged misrepresentations he (Peterson) allegedly had made during the prior negotiations for the contract of insurance.

On July 14 or 15, 1958, after Hanratty had substantially completed his investigation, the insured, Clarence Peterson, contacted one Wyman Smith who had been the Peterson family attorney for many years. Smith went to the Peterson home on July 17 and talked to Dennis Peterson and Misses Nelson, Walker, and Peterson, passengers in the Ford car at the time of the collision. Clarence Peterson was not present at that conversation. There is a direct conflict in the depositions as to whether Smith, at this time, was representing Dennis Peterson only for the purpose of defending him in Juvenile Court, or was preparing to act for Dennis and/or Clarence Peterson with reference to the anticipated negligence claims. Despite the insured's definite assertion that he had instructed Smith to contact his son for the sole purpose of appearing with him in Juvenile Court, it is obvious that Smith understood that he was to take care of certain matters involved in the accident and he so indicated this to the passengers in the Peterson car whom he interviewed at the Peterson home.

On July 22, 1958, the plaintiff agreed with its insured, Clarence Peterson, that it would defend the negligence actions, but that it was not thereby waiving any rights it then had against the insured in so far as the policy may have been invalid. This reservation of rights apparently was prompted by reason of alleged misrepresentations Peterson had made when the policy was written.

Near the end of July, 1958, Donna Mae Walker and Mattie Nelson contacted Wyman Smith who agreed to represent them concerning their personal injuries. About that same time, he told Clarence Peterson that he could not represent all of the people in this matter and that Peterson and his children would have to obtain other counsel to represent them in the civil matters. Smith suggested that the Petersons contact Richard Parish, of Robbinsdale, Minnesota, for this purpose. Peterson states that he was surprised when Smith told him that he would have to obtain another attorney. He then went with his daughter, Rosemary, to see Mr. Parish who agreed to represent them.

There is a conflict in the depositions as to whether the insured, Clarence Peterson, had advised Donna Mae Walker as to her securing an attorney to prosecute her claim arising out of the accident. Peterson denies that he had had any discussions with her on this matter. However, Miss Walker says that she had so discussed the subject with Peterson who recommended Smith as being a good lawyer. Apparently Peterson also informed her that it was not his decision, but hers to make. Miss Walker also states that she had contacted Peterson with reference to some "things" relating to the accident after she had retained Smith as her attorney and he had advised her to contact Smith.

Since Mattie Nelson was a minor, it was necessary that a guardian ad litem be secured for her before Smith, who had then been retained by her, could proceed with her claim. This was done in the following manner: The guardianship and other papers were sent by Smith to Clarence Peterson at his home with directions that they be given to the "girls that were there," and that he should see "that the right parties signed the papers." Peterson states that the papers were sent there because the children were staying at his house. However, Miss Nelson was not living there. Since she was residing with her older brother, Ernest O. Nelson, Jr., Peterson sent his son Dennis to the Nelson home where Ernest Nelson signed the papers. Dennis then took them back to his father who returned them to Smith. Both Dennis and Clarence Peterson knew that these papers were designed

to further Miss Nelson's claim against them and DeWolff.

Donna Mae Walker and Mattie Nelson, by her guardian ad litem, have brought actions for the personal injuries they had sustained against Clarence Peterson and Robert E. DeWolff in the District Court for Hennepin County. Wyman Smith has been their attorney in those proceedings. Rosemary Peterson, by Clarence Peterson as her guardian, brought an action against DeWolff in August, 1958. DeWolff has since impleaded Dennis Peterson as a third party defendant in that case. Robert Parish was the attorney for Miss Peterson when that suit was brought, but Wyman Smith replaced him in December, 1958. Smith also represented Dennis Peterson in Juvenile Court in August, 1958, as to the traffic violation lodged against him growing out of the accident.

The plaintiff insurance company contends on this motion that it has established beyond any reasonable doubt that the insured, Clarence Peterson, by fraud and collusive conduct, has been assisting the claimants in their claim against him rather than aiding it in the preparation of his defense. Therefore, it contends that the cooperation clause of the policy has been violated. 8 Appleman, Insurance Law & Prac., Sec. 4779 (1942). The basis for this contention lies in the insured's procuring Smith and Parish to represent the injured passengers of his automobile and accommodating these attorneys in the furtherance of the claims against him.

██ Although the facts as related above may tend to indicate that the insured intentionally cooperated with the injured young people who were passengers in the car which was driven by his son in aiding them to obtain legal advice as to their rights, such a finding does not establish that he acted in collusion with the claimants so as to justify, on this showing, a voiding of the policy. Moreover, mere sympathy for the claimants of the injured young people who are in a sense members of his household and who in part may have received their injuries through some negligence of his son, will not, without more, void the policy. Assistance of the insured to the injured young people under such circumstances may be fully consonant with good faith. Frazier v. Glens Falls Indemnity Co., Tex.Civ.App. 1955, 278 S.W.2d 388; 8 Appleman, Insurance Law & Prac., Sec. 4779 (1942) cum. supp. (1959). Before an insurance company can void a policy upon the ground that the insured failed to cooperate, it must show that he acted in bad faith. Commercial Standard Ins. Co. v. Readnour, 10 Cir., 1956, 241 F. 2d 14; Farmers Automobile Inter-Insurance Exchange v. Konugres, 1949, 119 Colo. 268, 202 P.2d 959; Medico v. Employers' Liability Assur. Corp., 1934, 132 Me. 422, 172 A. 1; Roth v. Nat. Automobile Mut. Cas. Co., 1922, 202 App.Div. 667, 195 N.Y.S. 865; Note, 19 Minn.L.Rev. 444, 445 (1935). A lack of good faith has not been conclusively proven on this showing.

██ It is true that it has been stated that where members of the same family are involved in accident claims against an insured covered by automobile insurance, the facts should be examined with great care. 8 Appleman, Insurance Law & Prac., Sec. 4778 (1942), and cases cited therein. And if the members of the family, including the insured, corruptly conspired to work together to secure a recovery not justified by the facts, then there has been a breach of the cooperation clause which may void the policy at the option of the insurer. It has been held that the fact that an insured's father has engaged a lawyer for his daughter, a claimant of his insurer, and subsequently acts as her guardian, is not in and of itself a showing of bad faith.

In New Amsterdam Casualty Co. v. Mandel, 1934, 115 N.J.Eq. 198, 170 A. 19, 21, the court stated,

"I am aware of no rule of law or morals which forbade a father—for a proper and legitimate purpose and in a proper and legitimate

manner—to advise or help his own daughter in the prosecution or enforcement of her lawful rights, even as against himself and even though he be insured against the result thereof."

No one charges here that the insured failed to furnish proper assistance to the plaintiff, or that whatever the insured may have done in any way affected or limited the plaintiff in its investigation of the accident, or that his conduct in any way prejudiced the plaintiff in being able to investigate fully and completely and defend the claims made against the insured. The mere fact that the insured called in and conferred with his personal attorney after the insurance company had agreed to defend the suits, with reservation of its rights, does not establish collusion or bad faith. Clearly, the insured was within the bounds of good faith in conferring with his attorney as to the position of the insurance company with respect to its assumption of the defense of the suits, but with reservation of its rights, and as to the question of the personal liability of the insured, either by reason of no coverage of the policy, or perchance by way of liability over the limits of the policy. That there was a close relationship between Smith and the insured is evident. This fact has been clearly established by many circumstances, including Smith's representation of the insured's son Dennis, a minor, who entered a plea of guilty to the traffic violation growing out of this accident. But there is no suggestion that the plea of guilty on the part of Dennis was a collusive move on the part of the insured or Smith. In any event, the Court cannot say, on this showing, that collusion and bad faith have been established as a matter of law. State Automobile Mut. Ins. Co. of Columbus, Ohio v. York, 4 Cir., 1939, 104 F.2d 730, certiorari denied 308 U.S. 591, 60 S.Ct. 120, 84 L.Ed. 495.

The Court does not assume to make any definitive ruling with respect to the insured's conduct as disclosed by the depositions and the affidavits on file, nor does the Court intend to indicate all the necessary elements which must be established in order to sustain plaintiff's cause of action. Suffice it to say that, on this record, the Court is clear that there is a genuine issue of a material fact which must be determined by the triers of the fact when this matter is heard on its merits. The motives and intentions of the parties may play an important role in this proceeding.

It follows from the foregoing that plaintiff's motion for a summary judgment is in all respects denied. It is so ordered. An exception is allowed.