No. 16,067.

FARMERS AUTOMOBILE INTER-INSURANCE EXCHANGE
*v.* KONUGRES.
(202 P. [2d] 959)

Decided January 31, 1949.

Messrs. WOLVINGTON & WORMWOOD, for plaintiff in error.

Mr. FRANK H. HALL, for defendant in error.

*In Department.*

MR. JUSTICE MOORE delivered the opinion of the court.

PLAINTIFF in error was defendant in the trial court and defendant in error was plaintiff. The parties are hereinafter designated as they there appeared.

The defendant corporation issued and delivered to the plaintiff its policy of public liability insurance, under the terms of which it agreed for the period from May 16, 1946, to November 16, 1946, to pay "on behalf of the insured [the plaintiff] all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of the use thereof, caused by accident and arising out of the ownership, maintenance or use" of the motor vehicle therein described.

On June 4, 1946, while the automobile covered by the policy was in the possession of, and being driven by, daughters of the plaintiff, the said automobile, as it is alleged, was negligently driven into and against the dwelling house of Ed Schimelfenig causing damage to the extent of $662.21. Under a subrogation agreement between the said Schimelfenig and the Camden Fire Insurance Association, the said association demanded payment by the plaintiff of the amount of said damage, and to enforce payment thereof brought an action against plaintiff herein in the district court of Las Animas county. In the said action the Camden Fire Insurance Association recovered judgment for the sum of $725.64. Following the entry of said judgment plaintiff herein paid the amount thereof in full, and then brought this action to recover the amount expended by him in satisfying the judgment, and sought in addition

thereto the payment of attorney's fees for services rendered to plaintiff in the defense of the said action.

It is admitted that the plaintiff demanded that defendant corporation defend the action above mentioned and that it refused to defend the same and refused to pay the judgment entered therein upon the trial of said cause. Defendant relies upon the following provisions contained in the policy issued to plaintiff:

"The insured shall cooperate with the Exchange and, upon the Exchange's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits.

"No action shall lie against the Exchange unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until thirty days after the required proofs of claim have been filed with the Exchange."

The defendant contends that plaintiff failed to assist defendant in securing evidence and in refusing to give evidence as requested, and that at the time defendant's representatives were investigating the accident the plaintiff stated facts under which there would be no legal liability on the part of the plaintiff to respond in damages. Defendant further contends that at the subsequent trial upon the issue of plaintiff's liability plaintiff testified to facts contrary to those stated by him to the agent of defendant, by reason of which testimony the trial court held plaintiff to be liable in the original action brought against him by the Camden Fire Insurance Company.

The trial court entered judgment for plaintiff for the total sum of one thousand eighty dollars and sixty-four cents, consisting of the following items:

$725.64—judgment in the original suit.

$150.00—attorney's fee expended by plaintiff for the defense of said action.

$5.00—defendant's docket fee.

$200.00—found by the court to be a reasonable attorney's fee for the services of plaintiff's attorney in this action.

The plaintiff admits that the award of two hundred dollars as attorney's fee in this action was erroneous, and consents that the amount of the judgment entered by the trial court be reduced by that amount.

The facts upon which defendant relied to sustain its claim of lack of cooperation are substantially these: At the time of the accident out of which this controversy arises, plaintiff's automobile was actually being driven by his daughter Beverly who was then past sixteen years of age and who was being taught how to drive a car by her elder sister Anne. Anne had a driver's license, but Beverly had none, and Beverly had never driven, nor attempted to drive, an automobile prior to her experience resulting in the accident. Anne was actively assisting in the driving of the automobile in that she had her hand on the "gears" and was explaining the operation of the car to her younger sister Beverly. The plaintiff had no knowledge concerning the accident except as he was informed thereof by his daughters. The daughters misstated the facts to plaintiff and at all times during which the defendant corporation was engaged in investigating the said accident, it believed that the daughter Anne was in fact driving the car at the time of the accident. Plaintiff in his report of the accident to the defendant, relying upon the false statement given to him by his daughters, stated that the driver of the car was the daughter Anne.

On July 30, 1946, an adjuster for the defendant consulted plaintiff and secured a statement from him to the effect that Anne was driving the automobile at the time of the accident. He also procured statements from Beverly, Anne, and Helen (another daughter of the plaintiff) to the effect that Anne was driving the car at the time of the accident and was alone in the car. The investigator for the company learned from other sources

that Beverly, the sixteen year old girl, was the actual driver of the car. He apparently did not remain in Trinidad at that time to settle the question as to who was driving the auto, but caused a letter to be sent to plaintiff advising him of the uncertainty concerning the identity of the driver, and inquiring as to which daughter was driving the automobile. The plaintiff's wife on his behalf replied as follows: "Since Mr. Konugres is still away from town, I shall reply to your letter of August 1, 1946. It was our daughter Anne who was driving the car at the time of the accident of June 6, 1946."

On September 5, 1946, the insurance adjuster returned and again discussed the matter with plaintiff and he claims that he advised plaintiff that he wanted sworn statements before a notary public to be given by the three daughters. The adjuster also stated that on this visit, the plaintiff refused to give a statement and that he refused to allow him to go to plaintiff's home to interview Beverly; however, this evidence is denied by the plaintiff who testified: "It is not true I would not let him call at the house and talk to Beverly, I told him to go. He was at the house more than once. I never told the girls not to give him a statement. I answered every question he asked me and tried to help him all I could." On cross-examination Mr. Williams, the insurance adjuster, stated that the plaintiff refused to give him a statement under oath, but that plaintiff never refused to sign any paper that he requested him to sign, and never refused to answer any question asked him. He further stated that plaintiff wanted his attorney to see anything that he signed and asked the adjuster to consult his attorney, since the matter was in the attorney's hands. The adjuster stated in response to a question as to whether he refused to consult plaintiff's attorney, "I refused, because I could not see anything to be gained by talking to you at that time. I was after the facts of the accident." In this connection it should be noted that the plaintiff cannot read and is unable to write except

to subscribe his name; that he was not present at any time when his daughters were questioned by the insurance adjuster; and that all of his correspondence was taken care of by his wife. All statements taken by the insurance adjuster from plaintiff were prepared by the adjuster himself and plaintiff submitted the statement signed by him on September 30 to his attorney for examination before signing it. The statement written by the adjuster on July 30, 1946, and signed by plaintiff, consists of seventeen lines of writing on one page of an ordinary letter-size scratch-pad. It is not contended that everything told the insurance adjuster by plaintiff on that occasion is set forth in this statement. The statement contains the following: "Beverly does not have permission to drive the car. She never drives." The plaintiff testified, however, that he kept the car for the use of his whole family, that he wanted all of his children to learn to drive the car when they were old enough, and that the older children taught the younger ones.

At the trial of the prior suit it was shown that the plaintiff testified that upon the date of the accident: " * * * I left my car at home so one of my daughters could drive it. I leave it most of the time for the kids to use. They use it more than I do. The keys are always there for them to use it. They can use it for any purpose they want. I want the children to learn to drive whenever they can. All the kids take it any time they want it; I can't stop them.

\* \* \*

"Beverly had no license to drive the car. I didn't give her permission to take it.

\* \* \*

"I knew the girls would teach Beverly how to drive. I didn't object to them teaching her, but she didn't have a license. I don't remember telling them they couldn't teach her."

Defendant contends that the variance between the

statement originally given defendant's representative by the plaintiff and the testimony above referred to, is a breach of the cooperation clause of the policy of insurance.

The trial court found the issues generally in favor of the plaintiff, and specifically its judgment contained in the following:

"The Court Further Finds: That Plaintiff was not a witness of the driving of his automobile at the time of the damages caused by the same being driven into and against the dwelling house of Mr. and Mrs. Schimelfenig, as aforesaid, and relied upon the statements of his said daughters, Anna Konugres and Beverly Konugres, that Anna Konugres was driving the same at the time said damages were incurred; that his said daughters reported to him that his daughter, Anna Konugres, was driving his said automobile, and by reason thereof, plaintiff reported said information to said defendant, verily believing the same to be the truth; that later, when plaintiff was advised that his said daughter Beverly Konugres was driving the plaintiff's car when it caused the damages aforesaid, he promptly advised the defendant of said later intelligence imparted to him; that plaintiff's acts, statements and conduct in the premises aforesaid were conscientiously and honestly related to defendant as he was advised by his said two daughters; and that his mistake was not wilfully committed, nor was his mistake knowingly made, and promptly upon being advised of the truth of who was driving his said car and the damages caused thereby, he promptly notified the defendant of the truth.

"The Court Further Finds: That plaintiff cannot either read or write, except he writes his name very imperfectly; that he does not speak English very fluently, and he was and is unable to read the printed report made by the agent of the defendant herein relating to the facts or circumstances of the damages done by plain-

tiff's car as above mentioned, and therefore does not and did not know its purport or contents."

Counsel for defendant asserts that there is no evidence that the plaintiff ever notified the defendant company, upon learning that his daughter Beverly was actually driving the car. We have examined the record and transcript of the testimony, and find no evidence that the plaintiff, at any time after learning that Beverly was the driver, notified the insurance company of that fact. There is evidence justifying the conclusion that plaintiff was not advised that Beverly was in fact the driver until after defendant refused to defend the action instituted against him, and under the circumstances of this case we do not consider that the failure of the plaintiff thus to notify the company, upon ascertaining the fact, amounted to a failure on his part to cooperate. While this portion of the findings of the trial court is without support in the evidence, we cannot consider the inclusion thereof in the findings is material to a proper solution of this controversy.

Since the plaintiff admits that the judgment should be reduced by the sum of two hundred dollars, being the amount awarded by the trial court to the plaintiff as attorney's fee in the trial of this cause, there remains but a single question for determination upon this review. That question is:

*Does the evidence introduced upon the trial show, as a matter of law, a failure on the part of plaintiff to comply with the cooperation clause of the insurance policy issued by defendant?*

█ The requirements in a policy of liability insurance for cooperation on the part of the assured under which the assured is obligated to "attend hearings and trials" and to "assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of suits," is a valid and enforceable provision. In the case of *Bagley v. Lumbermens Co.*, 99 Colo. 300, 62 P. (2d) 469, we absolved the

insurance company from liability because of the failure of plaintiff in that action to comply with a provision in the insurance contract similar to that upon which the defendant here relies. In the Bagley case the court found that there was an attempt on the part of the assured to defraud the company and that "the assured, fraudulently colluded and connived with his daughter, Sylvia Bagley, and her attorneys, to enable her to obtain the judgment against him, in order that he in turn might collect the same for her from the Lumbermens Mutual Casualty Company, as indemnity, upon the policy of insurance."

Whether there has been "cooperation" on the part of assured with the company in the defense of an action brought against the assured, is usually a question of fact, and a determination thereof by the trial court, if supported by competent evidence, will not be disturbed on review.

In *Finkle v. Western Automobile Ins. Co.*, 224 Mo. App. 285, 26 S. W. (2d) 843, the court said in considering a similar clause in an insurance contract: "Likewise, what would appear at first blush to be a breach of the cooperation clause may be excused, if it develops that the failure of the assured was due to mistake, and that there was no exercise of bad faith on his part." The court also stated: "Obviously it is not every failure to accede to the company's request for assistance that will have the effect of defeating the rights of the assured under his policy. Generally speaking, to constitute a breach of the cooperation provision of the contract, there must be a lack of cooperation by the assured in some material and substantial respect, and any formal, inconsequential, or collusive lack of cooperation will be immaterial. [George v. Employers' Liability Assurance Corporation (Ala.), 122 So. 175; Conroy v. Commercial Casualty Insurance Co., 292 Pa. 219, 140 Atl. 905; Riggs v. New Jersey Fidelity & Plate Glass Insurance Co., supra.]"

In *Ocean Accident & Guarantee Corporation v. Lucas,* 74 F. (2d) 115, it was contended that a variance between the written statement given to the insurance adjuster by the assured and the latter's testimony upon the trial of the original suit for damages, amounted to a failure to cooperate. The discrepancies between the statement to the adjuster and his sworn testimony upon the trial were far greater than any variances disclosed by the record in the present case. In that case the trial court instructed the jury that if the assured consciously testified to a set of facts materially different from that which he had given in any previous statement to the company's agent and attorneys, then there would be a lack of cooperation sufficient to absolve the company from liability. In passing upon the propriety of this instruction the court stated: "A deliberate and wilful falsification of material facts would have violated the terms of the policy.

\* \* \*

"If lack of cooperation under such a policy is found to exist upon the sole ground of variance in statements, that variance must be not only material, but conscious. Otherwise, an unscrupulous claim adjuster taking a written statement prior to trial could derive great advantage from such variance, for the honest witness might unconsciously vary a repeated story."

We approve the language quoted from the cases cited above. Upon competent evidence the trial court in this cause found that there was no fraud upon the part of plaintiff and that, "plaintiff's acts, statements and conduct in the premises aforesaid were conscientiously and honestly related to defendant as he was advised by his said two daughters," and that his mistake in reporting the name of the driver of his car was not wilfully committed nor knowingly made.

The judgment of the trial court is affirmed, subject, however, to the direction that judgment be entered in

favor of the plaintiff for the sum of eight hundred eighty dollars sixty-four cents, and costs.

Mr. Chief Justice Hilliard and Mr. Justice Jackson concur.