**Kenneth John WILSON,
Plaintiff-Appellee,**

**Ronald Duane Batdorf and Harold Alvin Geist, jointly and severally,
Defendants,**

**v.**

**UNITED STATES FIDELITY & GUARANTY COMPANY, and State Automobile and Casualty Underwriters, Garnishees-Appellants.**

**No. 79CA1044.**

Colorado Court of Appeals,
Div. I.

April 23, 1981.

Rehearing Denied May 21, 1981.

Certiorari Denied Sept. 8, 1981.

Anderson & Gehlhausen, John Gehlhausen, Lamar, for plaintiff-appellee.

Kane, Donley & Wills, HayDen W. Kane, Colorado Springs, for garnishee-appellant United States Fidelity & Guaranty Co.

Burnett, Horan & Hilgers, Mike Hilgers, Denver, for garnishee-appellant State Automobile and Casualty Underwriters.

KIRSHBAUM, Judge.

Garnishees, United States Fidelity & Guaranty Company (USF&G) and State Automobile and Casualty Underwriters (SACU), appeal an order of the trial court holding both garnishees jointly and severally liable to plaintiff Kenneth John Wilson as debtors of defendant Harold Alvin Geist. We affirm in part, reverse in part, and remand the cause for a new hearing.

A lengthy stipulation entered into by the parties establishes the following material facts. SACU was the insurer of Colorado Western Express (Express), a Colorado corporation licensed by the Colorado Public Utilities Commission (the Commission) to haul goods in Colorado to designated customers. Geist is the president of Express. USF&G was the insurer of National Farm Lines, Inc. (Farm Lines), a Texas farm cooperative. On February 14, 1975, Farm Lines filed an application with the Commission for registration and authority to operate in Colorado. The application was granted on August 20, 1975.

On July 3, 1975, Express and Farm Lines entered into a lease agreement whereby Express leased a tractor and trailer to Farm Lines for the purpose of hauling member and non-member freight from Texas to Colorado. The lease provided that during the term of the lease Farm Lines would assume sole responsibility for operation of the equipment, provide public liability and property damage insurance, and hold Express harmless for damage claims by reason of accident.

On July 6, 1975, the tractor and trailer unit was involved in an accident in Lamar, Colorado, with a car driven by Ronald Duane Batdorf. Geist was driving the tractor and Wilson was a passenger in Batdorf's car. Placards indicating the vehicle was a Farm Lines vehicle were attached to the tractor when the accident occurred.

The SACU insurance policy providing coverage for Express contained a notice provision requiring that the insured "immediately forward to the company every demand, notice, summons or other process received by him or his representative."

The parties' stipulation refers expressly to one specific exhibit attached thereto as the "applicable" USF&G insurance policy covering Farm Lines. That exhibit contains no general provision requiring the insured to notify USF&G promptly of any claim or to forward suit papers to USF&G.

Each insurance policy contains a public liability and property damage endorsement as a result of the insurer's filing of a special form with the Commission. SACU's form was in effect on the day the accident occurred. USF&G's form was filed on August 11, 1975.

On July 7, 1975, Geist orally notified both Farm Lines and a SACU agent of the accident. He did not know the identity of Farm Lines' insurer then. On August 16, 1976, an attorney representing Wilson sent letters to both SACU and USF&G notifying them of claims that Wilson had against their respective insureds. On September 3, 1976, SACU sent a letter to Wilson's attorney denying SACU's liability. On October 1, 1976, USF&G informed Wilson's attorney by letter that his August 16 letter was its first notification of the accident, and that USF&G would proceed with the investigation under reservation of rights to Farm Lines. In reply, the attorney advised USF&G by letter that Wilson considered Geist liable and that a civil action would be filed on or before a date certain.

On November 22, 1976, plaintiff filed this action. Geist was served on December 16, 1976. On December 23, 1976, a SACU agent received oral notification of the commencement of the action. On January 6, 1977, Geist telephoned Wilson's attorney, asked what he, Geist, should do with the suit papers, and was informed by Wilson's attorney that the papers should be forwarded to Geist's insurer. On that same day Geist forwarded the suit papers to Farm Lines. He did not forward them to SACU because he did not think SACU should be responsible.

On February 4, 1977, a default judgment of $43,117.50 was entered against Geist. On February 23, 1977, USF&G received a letter from Farm Lines which constituted USF&G's first notice of the litigation. On April 15, 1977, the garnishment proceeding which is the subject of this appeal was commenced.

## I. SACU'S LIABILITY

SACU contends that Geist's failure to forward suit papers to it promptly relieved it of any obligations under its policy with Express. We disagree.

An insured may have separate responsibilities under a particular insurance policy to notify his insurer of a claim and, if required, to forward suit papers to his insurer. *Thomas v. Guaranty National Insurance Co.*, Colo.App., 597 P.2d 1053 (1979). The purpose of such provisions is to allow the insurer to make appropriate investigations and to facilitate reasonable settlements of claims. *See Dairyland Insurance Co. v. Marez*, Colo.App., 601 P.2d 353 (1979). However, the insured's failure to comply with the notice provisions of an insurance contract may not relieve the insurer from its obligations under the contract if such non-compliance is excused. *Barnes v. Waco Scaffolding & Equipment Co.*, 41 Colo.App. 423, 589 P.2d 505 (1978).

Here, unlike the insurer in *Thomas v. Guaranty National Insurance Co., supra*, SACU had actual notice that Wilson had filed an action against Geist one week after it was filed. SACU had previously been informed of Wilson's claim against Geist, and had denied liability for that claim to Wilson's attorney. Thus, the purpose of the policy's provision regarding the forwarding of suit papers had been achieved, and Geist's failure to comply with the notice provisions was excused. Hence, Geist's error did not constitute a waiver of his protection under the SACU–Express policy. *See Andrews v. Cahoon*, 196 Va. 790, 86 S.E.2d 173 (1955).

As we conclude that in these circumstances Geist's failure to forward suit papers to SACU was excused, we need not consider SACU's additional argument that the terms of the PUC public liability and insurance endorsement did not alter the policy's notice requirements.

## II. USF&G'S LIABILITY

USF&G contends that the trial court erred in giving effect to the public liability and property damage endorsement to its policy covering Farm Lines. We agree.

Farm Lines filed its application for PUC permission to operate in Colorado on February 14, 1975. The PUC took no action on that application.

Pursuant to § 40–6–120(1), C.R.S.1973, the PUC may "grant temporary authority" to an applicant to operate in Colorado without having received a permanent certificate upon a finding that there is "an immediate and urgent need" for the proposed services. *See Aspen Airways, Inc. v. Rocky Mountain Airways, Inc.*, 196 Colo. 285, 584 P.2d 629 (1978). The terms of the statute require the PUC to take administrative action to authorize temporary operations pending the issuance of a permanent certificate.

Here, the PUC took no such action to authorize temporary operations by Farm Lines, and the record does not reveal that Farm Lines ever requested such temporary authority. Farm Lines did not receive authority to operate in Colorado from the PUC until six weeks after the accident of July 3, 1975. The public liability and property damage endorsement applies by its terms only to vehicles owned or operated "pursuant to" PUC authority. Here there being no temporary authority, Farm Lines was not operating pursuant to PUC authority on the date of the accident.

USF&G also argues that the trial court erred in requiring USF&G to submit its claim file to the court for *in camera* inspection. The trial court's order was prompted by discovery requests of Wilson pursuant to C.R.C.P. 34 and 37. The file was examined *in camera*, and none of the documents deemed "confidential" by USF&G were viewed by Wilson. We find no error in the trial court's procedure.

USF&G's final argument challenges the trial court's determination that Farm Lines complied with the notice provisions of the applicable insurance policy. We conclude that the judgment must be reversed and the cause remanded for a new hearing on this issue.

At trial the parties executed a lengthy stipulation of facts. Attached to the stipulation and incorporated therein by reference were multi-page documents expressly identified as the applicable USF&G–Farm Lines and SACU–Express insurance contracts.

The stipulation and those documents were admitted into evidence, and the trial court expressly incorporated the entire stipulation into its memorandum opinion. The USF&G–Farm Lines insurance contract attached to the stipulation does not include the policy jacket containing that contract's notice provisions.

 The trial court's conclusion that USF&G had been given adequate notice was based on its factual determination that the notice provisions of the USF&G–Farm Lines policy were identical to those set forth in the SACU–Express policy. To make that determination, the trial court compared a copy of a USF&G–Farm Lines policy jacket attached to a trial brief filed by Wilson with the SACU–Express policy. However, the trial court did not admit the USF&G–Farm Lines policy jacket into evidence, and Wilson has asserted at all times that USF&G failed to introduce any evidence of the notice provisions it relied upon. As fact-finder, the trial court must base its factual determinations only upon matters admitted into evidence during the trial. *See McCormick on Evidence* § 51 (E. Cleary 2d ed. 1972) (footnote 1, p. 109). The trial court failed to so limit its considerations here.

Since the copy of the USF&G policy jacket was not admitted into evidence, the trial court had no proper basis to determine whether Farm Lines complied with the notice provisions of the policy.

Although Wilson has argued throughout these proceedings that USF&G failed to establish its defense of lack of notice, Wilson also argued to the trial court that it was immaterial to him which of the garnishees was held liable to him. USF&G assumed at all times that the policy jacket had been deemed evidence by the trial court, and based its arguments to the trial court on that assumption. In these circumstances, we conclude that this issue was not properly resolved by the trial court, with resultant prejudice to both parties. *See Chew v. District Court,* 171 Colo. 99, 464 P.2d 521 (1970); *see Read v. Kipke,* 535 P.2d 1130 (Colo.App.1975) (not selected for official publication). Hence, that portion of the trial court's order must be reversed. *See Kitto v. Gilbert,* 39 Colo.App. 374, 570 P.2d 544 (1977).

The order is affirmed as to SACU. The order is reversed as to USF&G, and the cause is remanded for a new hearing limited to the issue of whether USF&G received sufficient notice pursuant to the provisions of the USF&G–Farm Lines insurance policy.

COYTE and VAN CISE, JJ., concur.