Susan Rose HANSEN, Plaintiff–Appellant,

v.

Keith A. BARMORE, Defendant,

and

Allstate Insurance Company, Garnishee–Appellee.

No. 87CA1518.

Colorado Court of Appeals, Division III.

Feb. 23, 1989.

Rehearing Denied March 23, 1989.

Certiorari Denied Sept. 5, 1989.

Ozer, Kiel, Trueax, Pribila & Kullmann, P.C., Robert F. Pribila, Colorado Springs, for plaintiff-appellant.

Zupkus & Ayd, P.C., Robert A. Zupkus, Denver, for garnishee-appellee.

FISCHBACH, Judge.

Plaintiff, Susan Rose Hansen, appeals the trial court's order denying her garnishment claim against Allstate Insurance Company. The issue before us is whether the trial court erred in concluding that Allstate has no liability to Hansen because Allstate's insured, Keith Barmore, failed to forward to Allstate copies of the summons and complaint Hansen served upon him. We reverse.

Hansen was injured on November 27, 1984, when Barmore drove into Hansen's car broadside. Barmore was the permissive driver of a vehicle owned by Debra Denham and insured by Allstate. Barmore, as well as Denham and Hansen, advised Allstate of the accident in timely fashion.

Hansen served Barmore with a summons and complaint on February 6, 1986, and, after receiving no answer, forwarded a copy of each to Allstate with an accompanying letter warning of a possible default judgment against Barmore. Allstate acknowledged receipt of the suit papers on May 1, 1986, and, on August 19, Hansen moved for a default judgment, which was granted on October 16, 1986.

On May 12, 1987, Hansen served Barmore and Allstate with a writ of garnishment, requiring Allstate to identify all personal property it held or possessed that was "owed to or owned by" Barmore. Allstate answered that it held no property of Barmore's. The trial court agreed with Allstate and denied Hansen's traverse, concluding that because Barmore had breached the insurance policy provision requiring

**1362**

the insured to "immediately forward to All-state every demand, notice or summons received," Allstate had no duty to defend or pay under the policy. This appeal followed.

## I.

The rights of parties to an insurance policy are contractual and are measured by a reasonable and natural construction of the terms and conditions of the policy. *Barclay v. London Guarantee & Accident Co.*, 46 Colo. 558, 105 P. 865 (1909). Accordingly, express provisions in a policy requiring that the insured give notice of the accident and forward suit papers to the insurer as a condition precedent to coverage are enforceable. *See Marez v. Dairyland Insurance Co.*, 638 P.2d 286 (Colo.1981); *Thomas v. Guaranty National Insurance Co.*, 43 Colo.App. 34, 597 P.2d 1053 (1979). However, such provisions may be set aside for substantial justification. *Marez, supra.*

Substantial justification exists when the insured has adequate excuse for noncompliance, *Barnes v. Waco Scaffolding & Equipment Co.*, 41 Colo.App. 423, 589 P.2d 505 (1979), or when the purposes of the provisions are met by actual notice to the insurer, whether or not in strict compliance with the policy. *Emcasco Insurance Co. v. Dover*, 678 P.2d 1051 (Colo.App.1983); *Wilson v. U.S. Fidelity & Guaranty Co.*, 633 P.2d 493 (Colo.App.1981).

## A.

Allstate first argues that notice to the insurer by a third party, even if otherwise timely, cannot constitute substantial justification for setting aside a policy's notice provisions. We disagree.

The question of whether there is substantial justification for enforcing an insurance policy when its notice provisions, including notice of both accident and suit, are satisfied by an injured third party rather than the insured, is one of first impression in Colorado. It is not, however, a question attracting widespread debate. To the contrary, the rule we now adopt—that compliance by the injured party suffices—is in accordance with the vast majority of jurisdictions that have ruled on the issue. *See Casualty Indemnity Exchange v. Crete*, 731 F.2d 457 (7th Cir.1984); *Foundation Reserve Insurance Co. v. Kelly*, 388 F.2d 528 (10th Cir.1968); *Stonewall Insurance Co. v. Farone*, 129 Ga.App. 471, 199 S.E.2d 852 (1973); *Transamerica Insurance Co. v. Norfolk & Dedham Mutual Fire Insurance Co.*, 361 Mass. 144, 279 N.E.2d 686 (1972); *Kidwell v. Chuck Olson Oldsmobile, Inc.*, 4 Wash.App. 471, 481 P.2d 908 (1971). Recognized treatises on insurance law also accept that rule as not open to serious challenge. *See, e.g.*, 8 J. Appelmann, *Insurance Law & Practice* § 4738 (1981).

The conclusion reached by this majority of jurisdictions is based on two lines of reasoning: the public nature of automobile insurance, and the purposes behind policy notice provisions.

As to the public nature of automobile insurance, in *Simmon v. Iowa Mutual Casualty Co.*, 3 Ill.2d 318, 121 N.E.2d 509 (1954), the Supreme Court of Illinois noted that such insurance: "is no longer a private contract between parties." Rather, because of the significant amount of litigation arising from the operation of motor vehicles and the numerous laws aimed at protecting those injured in automobile accidents, it pointed out that "[g]overnment and the general public have an understandable interest in the problem." With those principles in mind, the *Illinois* court stated:

"Conceding that the insurance company is entitled to reasonable notice to protect its interests, where such notice is given by a person other than the assured, is the company then without liability in the event the injured party is entitled to recovery? We do not feel that such a harsh result should follow, nor that it was intended by the contracting parties."

By also looking to the purpose of the notice provisions, the majority of courts have counterbalanced the public interest in automobile insurance with the private interest of the insurance company as a party to the contract. The dual purpose of the

requirements of prompt and timely notice of the accident and suit is "(1) to afford the insurer opportunity to make reasonable investigation and (2) to enable the insurer to adequately prepare a defense, if that be necessary." *White v. Nationwide Mutual Insurance Co.*, 245 F.Supp. 1 (W.D.Va. 1965), *aff'd*, 361 F.2d 785 (4th Cir.1966); *see Marez v. Dairyland Insurance Co., supra; Wilson v. U.S. Fidelity & Guaranty Co., supra.* In satisfying this dual purpose, "[t]he question as to who gives the notice to the insurer is obviously of minor importance as long as notice is actually given of the occurrence of the accident or the pendency of the suit." Annot., 18 A.L. R.2d 443 at 448 (1951), *quoted in Kidwell v. Chuck Olson Oldsmobile, Inc., supra.*

The rule that an automobile insurance policy shall be enforced when the injured party complies with the policy's notice provisions also is consistent with Colorado precedent.

The only Colorado case implicitly addressing the importance of the source of notice is *Wilson v. U.S. Fidelity & Guaranty Co., supra,* in which this court affirmed a garnishment order against an insurance company over its objection that the insured had breached the policy by failing to forward suit papers. Because the purpose of the notice requirements—to allow the insurer to make appropriate investigations and to facilitate reasonable settlements of claims—was satisfied by actual oral notice of the action, the company could not escape liability under the policy for failure to receive the papers. Significantly absent from the opinion was an identification of who gave the company the oral notice. The actual notice, not its source, controlled the outcome.

Citing *Marez v. Dairyland Insurance Co., supra,* Allstate argues, in effect, that regardless of *Wilson v. U.S. Fidelity & Guaranty Co., supra,* our supreme court has since clarified that notice must be provided by the insured himself. Allstate's interpretation of *Marez* is inaccurate.

In *Marez,* denial of benefits to the injured party was explicitly based on the facts there at issue, including lack of notice by *anyone* of both accident and suit until the insurance company by chance learned of them two and one-half years after the accident. In light of these facts, the supreme court affirmed the trial court's conclusion that no substantial justification existed for setting aside the policy conditions and requiring payment by the totally innocent and uninformed company. The *Marez* court by no means overruled *Wilson v. U.S. Fidelity & Guaranty Co.,* a case upon which it had denied certiorari only a few months previously, nor did it suggest that substantial justification would not exist if the company had received adequate notice from the injured party rather than the insured.

We therefore conclude that the trial court erred in denying Hansen's garnishment against Allstate on the basis of Barmore's failure to forward suit papers.

### B.

■ Having concluded that Hansen was eligible to forward the suit papers in Barmore's stead, we must now determine whether she did so in a timely fashion in substantial compliance with the policy.

When the facts are undisputed and only one inference can be drawn from them, what constitutes reasonable time for giving notice is a question of law. *Certified Indemnity Co. v. Thun,* 165 Colo. 354, 439 P.2d 28 (1968); *Graton v. United Security Insurance Co.,* 740 P.2d 533 (Colo.App. 1987).

Here, the record reflects that Hansen's attorney wrote to Allstate concerning his representation on December 11, 1985, received a reply on December 18, filed a complaint on December 27, properly served Barmore with summons and complaint on February 6, 1986, received further correspondence from Allstate on March 11, and responded to Allstate's informational requests on March 25 and April 14.

The record further indicates that on April 14, Hansen's attorney also sent Allstate copies of the summons and complaint, which were received on May 1, 1986. Allstate not only received the summons and

complaint twelve weeks after service, having previously corresponded with Hansen's attorneys in such manner that Hansen reasonably could have believed the papers had already been forwarded, it also was given extra time in which to respond to the complaint and avoid a default judgment. Under these circumstances, we conclude, as a matter of law, that Hansen's delivery of the suit papers to Allstate was in substantial compliance with the policy. *See Emcasco Insurance Co. v. Dover, supra.*

## II.

Allstate contends further that even if Hansen satisfied the policy requirement of forwarding suit papers, Allstate is excused from liability because of Barmore's failure to cooperate. Again, we disagree.

■ Generally, the question of whether the insured has violated his insurance policy by failing to cooperate with the insurer is a question of fact for the trial court. *Farmers Automobile Inter–Insurance Exchange v. Konugres,* 119 Colo. 268, 202 P.2d 959 (1949). However, if, as here, the trial court has made no finding on the matter and the record can produce no other result, we may determine the issue of non-cooperation as a matter of law. *See Gross v. Appelgren,* 171 Colo. 7, 467 P.2d 789 (1970); *see also Certified Indemnity Co. v. Thun, supra.*

■ Recovery under an insurance policy may be forfeited when, in violation of a policy provision, the insured fails to cooperate with the insurer "in some material and substantial respect." *Farmers Exchange v. Konugres, supra.* By definition, cooperation requires "joint operation: common effort or labor," *Webster's Third New International Dictionary* 501 (1986); thus, an insured cannot fail to cooperate unless the insurer has in good faith requested his assistance. *See Gregory v. Highway Insurance Co.,* 24 Ill.App.2d 285, 164 N.E.2d 297 (1960); *see also Savio v. Travelers Insurance Co.,* 678 P.2d 549 (Colo.App. 1983), *aff'd in part, rev'd in part on other grounds,* 706 P.2d 1258 (Colo.1985) (insurer's duty to act in good faith in dealing with its insured is implied by law as covenant of insurance contract). Non-coopera-

tion constitutes breach only if material and substantial disadvantage to the insurer is proved. *Brooks v. Haggard,* 481 P.2d 131 (Colo.App.1970) (not selected for official publication) *cert. denied* (Colo.1971). "[A]ny formal, inconsequential, or collusive lack of cooperation will be immaterial." *Farmers Exchange v. Konugres, supra.* "Likewise, what would appear at first blush to be a breach of the cooperation clause may be excused, if it develops that the failure of the assured was due to mistake, and that there was no exercise of bad faith on his part." *Farmers Exchange v. Konugres, supra; cf. Bagley v. Lumbermens Mutual Casualty Co.,* 99 Colo. 300, 62 P.2d 469 (1936).

■ Here, in spite of Allstate's arguments of non-cooperation, the record is devoid of a single example of a request by Allstate for assistance from Barmore which was refused. The record reveals that shortly after the accident, Allstate requested that Barmore contact it and he complied. When Hansen's attorney thereafter advised Allstate that he would be representing Hansen concerning the accident, Allstate made no attempt to contact Barmore. Instead, it waited until receiving the summons and complaint, at which time it unsuccessfully visited and sent letters by certified mail to two old addresses. These facts, demonstrating neither a good faith request for assistance by Allstate nor bad faith on the part of Barmore, *see Farmers Exchange v. Konugres, supra,* as a matter of law, cannot establish Barmore's breach of the policy's cooperation clause. *See Gleason v. Fryer,* 30 Colo.App. 106, 491 P.2d 85 (1971).

The order of the district court is reversed, and the cause is remanded with the direction that the request for garnishment in Hansen's verified traverse of answer be granted.

STERNBERG and NEY, JJ., concur.