55 F.3d 537
 40 ERC 2116
 LEADVILLE CORPORATION, a Colorado corporation,
Plaintiff-Counter-Defendant-Appellant,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, a Maryland
corporation, Defendant-Counter-Claimant-Appellee.
 No. 94-1386.
 United States Court of Appeals,
Tenth Circuit.
 May 23, 1995.
 
 Peter Cosgriff, Cosgriff & Berry, L.L.C., Leadville, CO, for appellant.
 Ronald M. Sandgrund (Sally W. Van Der Wey, with him on the briefs), Vanatta, Sullan and Sandgrund, P.C., Englewood, CO, for appellee.
 Before TACHA, ALARCON,* and HENRY, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 Plaintiff Leadville, a Colorado corporation, brought this action seeking indemnification and defense costs from defendant United States Fidelity and Guaranty Company (USF & G), a Maryland corporation, under a series of comprehensive general liability policies. Defendant counterclaimed for $64,614 it had advanced plaintiff for plaintiff's defense costs. The district court granted defendant summary judgment both on plaintiff's claims and on defendant's counterclaim, and plaintiff now appeals. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 and affirm.
 
 
 2
 * This is an insurance coverage case. The sole question is whether defendant must indemnify plaintiff and pay plaintiff's defense costs incurred as a result of its liability for environmental damage to a site in Colorado known as California Gulch.[1]
 
 
 3
 On December 7, 1983, the State of Colorado filed a complaint against Asarco, one of several mining companies operating in an area near the Yak Tunnel in Colorado. The State asserted that Asarco was liable under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. Secs. 9601-9615, for the damage done to California Gulch by the discharge of acid mine water through the Yak Tunnel. At the time of the discharge, plaintiff owned various mining claims located at the head of the Yak Tunnel.
 
 
 4
 On January 7, 1985, Asarco filed a third-party complaint against plaintiff and other individuals and entities, seeking contribution for any CERCLA liability arising from the contamination of California Gulch. On August 6, 1986, the Environmental Protection Agency (EPA) initiated its own CERCLA action against plaintiff, Asarco, and eleven other individuals and entities involved in the California Gulch site. The two actions were eventually consolidated (the "underlying action").
 
 
 5
 In late 1986 or early 1987, plaintiff's secretary-treasurer, Daniel Nibler, discussed plaintiff's coverage for CERCLA liability under its USF & G policies with Robert Helzer. Helzer worked for Alexander & Alexander and was plaintiff's insurance broker.
 
 
 6
 Plaintiff did not formally notify defendant of its potential CERCLA liability in writing until June 22, 1989. At that time, plaintiff also requested that defendant provide a defense in the underlying action, contending that its general liability policies with USF & G imposed on defendant a duty to defend. Defendant disagreed and denied any such obligation. After the Colorado Supreme Court's decision in Hecla Mining Co. v. New Hampshire Ins. Co., 811 P.2d 1083 (Colo.1991), however, defendant agreed to advance plaintiff $64,614 toward plaintiff's defense costs while reserving its rights to deny coverage and its duty to defend in the underlying action. Plaintiff, in consultation with defendant, subsequently resolved its CERCLA liability through a consent decree with the EPA entered on August 6, 1993. The agreement required plaintiff to pay $3 million into the Hazardous Substance Superfund.
 
 
 7
 Plaintiff then brought this action in federal district court seeking indemnification and payment of its defense costs. Jurisdiction was based on the parties' diversity of citizenship pursuant to 28 U.S.C. Sec. 1332. Plaintiff moved for partial summary judgment on the issue of defendant's duty to defend. Defendant moved for summary judgment based on two alternative grounds: (1) that plaintiff failed to comply with the policy's notice provisions, and (2) that certain policy exclusions preclude coverage of the underlying action. Defendant also moved for summary judgment on its counterclaim, seeking the defense costs it had previously advanced plaintiff. The district court granted defendant's motion for summary judgment and ordered plaintiff to reimburse defendant for the $64,614 advance. Plaintiff now appeals.
 
 II
 
 8
 We review a district court's grant of summary judgment de novo and apply the same legal standard used by the district court. Wood v. Eli Lilly & Co., 38 F.3d 510, 512 (10th Cir.1994). Under Fed.R.Civ.P. 56(c), summary judgment is appropriate only if the record, viewed in the light most favorable to the nonmoving party, reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Repp v. Anadarko Mun. Hosp., 43 F.3d 519, 521 (10th Cir.1994). Moreover, as a federal court sitting in diversity, our role "is to ascertain and apply Colorado law to the end that the result obtained in federal court is the result that would have been reached if this litigation had been pursued in Colorado court." Lutz Farms v. Asgrow Seed Co., 948 F.2d 638, 641 (10th Cir.1991). We review the district court's construction of Colorado law de novo. Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).
 
 
 9
 The district court concluded that defendant was entitled to summary judgment because plaintiff failed to provide timely notice of the underlying action.[2] The court based its conclusion on two provisions in the parties' insurance contract. The first states that "[i]n the event of an occurrence, written notice ... shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable." The second provides that "[i]f claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative." The district court reasoned that, "because Leadville did not provide written notice to USF & G 'as soon as practicable' after the occurrence or 'immediately forward' the complaint and summons to USF & G as required by the policies, it failed to satisfy these conditions precedent to insurance coverage."
 
 
 10
 Under Colorado law, "[t]he rights of parties to an insurance policy are contractual and are measured by a reasonable and natural construction of the terms and conditions of the policy." Hansen v. Barmore, 779 P.2d 1360, 1362 (Colo.Ct.App.1989). And the "express provisions in a policy requiring that the insured give notice of the accident and forward suit papers to the insurer as a condition precedent to coverage are enforceable." Id. Moreover, "where delay in giving notice is unexcused, prejudice to the insurer need not be shown." Graton v. United Sec. Ins. Co., 740 P.2d 533, 534 (Colo.Ct.App.1987).
 
 
 11
 Plaintiff posits several arguments why its delay in giving defendant formal written notice should not preclude coverage. First, plaintiff contends that the proper date for measuring its notice to defendant is not June 22, 1989, when it finally provided written notice. Rather, plaintiff contends that it notified defendant in late 1986 or early 1987, when Nibler discussed with Helzer plaintiff's coverage for any potential CERCLA liability under the USF & G policies.
 
 
 12
 Under no circumstances, however, could Nibler's oral notification to Helzer of the underlying action have satisfied either of the policy's notice provisions. While the first provision permits that notice may be made to "any of [defendant's] authorized agents," it also mandates that the notice be "written." And the second notice provision requires both that the insured forward any summons or process and that the forwarding be "to the Company." Thus, under the terms of the contract, plaintiff did not provide notice until June 22, 1989.
 
 
 13
 Plaintiff next contends that the policies' "notice provisions are ambiguous when read in the context of a CERCLA case." Unlike an automobile accident, an "occurrence" giving rise to CERCLA liability for damage to the environment is not reducible to a single, definable moment. Plaintiff accordingly argues that, because the time at which it became obligated to notify defendant was unclear, its notice should be considered timely.
 
 
 14
 Even assuming arguendo that the first notice provision is ambiguous in the context of CERCLA liability, there is no ambiguity in the policy's second notice provision. It requires the insured to "immediately forward to the Company every demand, notice, summons or other process" once suit has been brought against the insured. Colorado law commands that "[i]nsurance contracts are to be construed according to the general rules for construction of contracts," Marez v. Dairyland Ins. Co., 638 P.2d 286, 289 (Colo.1982), and that we give the words of the contract their "reasonable and natural construction," Hansen, 779 P.2d at 1362. Applying these principles, we find this provision to be unambiguous: Plaintiff was obligated to forward the suit papers immediately after it received them in January 1985 (pursuant to Asarco's third-party action) and June 1986 (pursuant to the EPA action), but it did not do so.
 
 
 15
 Plaintiff also contends that its delay in notifying defendant is legally relevant only if defendant was thereby prejudiced. The Colorado Supreme Court, however, has expressly rejected the proposition that the legal significance of an insured's failure to provide notice turns on its prejudice to the insurer. Marez, 638 P.2d at 291. Under Colorado law, "prejudice to an insurer is not a factor to be considered in a late-notice case." Emcasco Ins. Co. v. Dover, 678 P.2d 1051, 1054 (Colo.Ct.App.1983); see also Graton, 740 P.2d at 534; United Serv. Automobile Ass'n v. Allstate Ins. Co., 662 P.2d 1102, 1105 (Colo.Ct.App.1983). Thus, whether defendant was prejudiced by plaintiff's late notice is immaterial.
 
 
 16
 Finally, plaintiff argues that its delay in notifying defendant should be excused because it reasonably believed that (a) "it would have no liability with respect to the Yak Tunnel" or "the California Gulch Superfund site," and (b) its policies with defendant did not cover liability under CERCLA. Plaintiff asserts that its understanding of the policies' coverage was supported by the advice of its insurance broker, Robert Helzer, who told plaintiff's secretary-treasurer, Daniel Nibler, that he did not think that the policies covered its CERCLA liability. Plaintiff contends that these reasonable beliefs excuse its failure to notify defendant until June 1989.
 
 
 17
 Colorado courts have consistently held that provisions in an insurance policy requiring an insured to notify its insurer "may be set aside for substantial justification." Hansen, 779 P.2d at 1362. "Substantial justification exists when the insured has adequate excuse for noncompliance," id., or has demonstrated "a justifiable excuse or extenuating circumstances explaining the delay," Graton, 740 P.2d at 534.[3]
 
 
 18
 With respect to plaintiff's belief that it had no liability for the environmental damage to California Gulch, its understanding was no longer reasonable after the EPA filed its complaint in August 1986. At that point, as plaintiff concedes, Leadville was aware that it might be liable under CERCLA for the discharge from Yak Tunnel. Thus, plaintiff's belief that it was not liable in the underlying action could not excuse the delay in giving written notice until June 1989.
 
 
 19
 The reasonableness of plaintiff's belief that its policies with defendant did not cover CERCLA liability requires a bit more analysis. In Colard v. American Family Mut. Ins. Co., 709 P.2d 11 (Colo.Ct.App.1985), the Colorado Court of Appeals excused an insured's failure to forward suit papers based on the insured's reasonable belief that he was not covered under the policy. Id. at 15. The court stated that "[w]here the insured, acting as a reasonably prudent person, believes he is not liable for the damage, a delay or failure to give the required notice under the policy is excused." Id. The insured in Colard had been advised both by an agent of the insurer and by his attorney that he was not covered. Id. The court therefore held that the insured had acted as a reasonably prudent person in determining whether he had coverage, excusing his delay in notice. Id.; see also Barnes v. Waco Scaffolding & Equip. Co., 41 Colo.App. 423, 589 P.2d 505, 507 (1978) (holding that "a reasonable construction of [an insurance] policy excuses delayed notice where the insured has acted as a reasonably prudent person in deciding he is not liable for the accident").
 
 
 20
 Unlike Colard, the facts of this case belie plaintiff's contention that it acted with reasonable prudence. First, the person who advised plaintiff that it was not covered, Robert Helzer, represented plaintiff's own interests in its dealings with defendant. As Daniel Nibler, the plaintiff's representative in its interactions with Helzer, acknowledged in his deposition, he expected both Helzer and Alexander & Alexander to act as plaintiff's advocates in negotiations for plaintiff's coverage and premiums with insurance companies, including USF & G. Second, plaintiff had reason to believe that Helzer's opinion was not well-informed. Specifically, Nibler stated that when he sought Helzer's opinion, he did not advise Helzer of the details of the underlying action and that he could not remember providing Helzer with copies of the complaints filed against plaintiff. Finally, there is no evidence that plaintiff sought the advice of an attorney on the coverage question until April 1989. While plaintiff retained counsel for representation in the underlying action, nothing in the record indicates that plaintiff pursued legal advice concerning its coverage under its policies with defendant until shortly before plaintiff gave defendant written notice in 1989.
 
 
 21
 The only other evaluation of plaintiff's coverage for CERCLA liability that plaintiff points to as a basis for its reasonable belief in noncoverage is the assessment done by plaintiff's general superintendent, Douglas Christopherson. The record indicates, however, that Christopherson did not evaluate the relevant policy provisions in any detail until 1988. Thus, Christopherson's opinion on the matter could not have contributed to plaintiff's belief that it was not covered until roughly two years after the EPA action had been filed. Moreover, Christopherson admitted in his deposition that making such evaluations was not part of his job duties.
 
 
 22
 Under these circumstances, we find that plaintiff did not act with reasonable prudence in determining whether its policies with defendant covered its CERCLA liability. As a result, plaintiff's failure to notify defendant until June 1989 was not "substantially justified" under Colorado law. And "an unexcused delay in giving notice or forwarding suit papers relieves the insurer of its obligations under the policy." Marez, 638 P.2d at 290.
 
 
 23
 In sum, we find no merit in plaintiff's allegations of error by the district court. The policy obligated plaintiff to forward any court papers immediately and to notify the company in writing as soon as it learned that it was being sued. Plaintiff's failure to notify defendant in writing until almost three years after the EPA filed its complaint was a material breach of its obligations under the insurance contract. Under Colorado law, defendant is accordingly absolved of its duty to defend or indemnify plaintiff for its liability in the underlying action.
 
 III
 
 24
 For the aforementioned reasons, the order of the district court granting defendant summary judgment, both on plaintiff's indemnity and defense costs claims and on defendant's counterclaim for $64,614, is AFFIRMED.
 
 
 
 *
 The Honorable Arthur L. Alarcon, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation
 
 
 [1]
 The facts giving rise to plaintiff's liability for the damage to California Gulch are discussed in Hecla Mining Co. v. New Hampshire Ins. Co., 811 P.2d 1083 (Colo.1991). Because those facts are unrelated to the legal issues in this case, we do not restate them here
 
 
 [2]
 The district court also held that, even if plaintiff had provided defendant timely notice, certain policy exclusions precluded coverage for plaintiff's CERCLA liability. Because the notice issue is dispositive of plaintiff's claims, we do not address this part of the district court's order
 
 
 [3]
 At least three Colorado Court of Appeals decisions have held that substantial justification exists when the insurer receives actual notice of the occurrence or legal action. See Hansen, 779 P.2d at 1362; Emcasco, 678 P.2d at 1053; Wilson v. United States Fidelity & Guaranty Co., 633 P.2d 493, 496 (Colo.Ct.App.1981). Because plaintiff does not allege that defendant had actual notice (other than through Nibler's oral notification to Helzer), we do not address this issue here