**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 24 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

METRO WASTEWATER
RECLAMATION DISTRICT, a
political subdivision of the State of
Colorado, formerly known as
METROPOLITAN DENVER
SEWAGE DISPOSAL DISTRICT NO.
1,

        Plaintiff - Appellee - Cross-
        Appellant,

v.

FIREMAN'S FUND INSURANCE
COMPANY,

        Defendant - Appellant - Cross-
        Appellee.

------------------------------------------

THE INSURANCE
ENVIRONMENTAL LITIGATION
ASSOCIATION; COLORADO
MUNICIPAL LEAGUE,

        Amici Curiae.

Nos. 99-1327, 99-1336,
01-1196, 01-1234
(D.C. No. 89-D-895)
(D. Colorado)

**ORDER AND JUDGMENT**[*]

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **EBEL** and **KELLY**, Circuit Judges, and **WINDER**[**], District Judge.

---

Plaintiff Metro Wastewater, a political subdivision of the State of Colorado, brought this action against its insurer, Fireman's Fund Insurance Company, alleging a duty to defend and indemnify under a series of comprehensive general liability insurance policies for costs arising from the cleanup of a sewage disposal site. The policies protected against potential liability for environmental impact arising from the disposal of sewage sludge. A jury found in favor of Metro. On appeal, the insurer contends that reversal is warranted by erroneous jury instructions regarding the timeliness of the notice and the district court's improper interpretation of the insurance policies' pollution exclusion clause. We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse and remand.

## Background

Metro Wastewater Reclamation District ("Metro") has treated sewage from the Denver metropolitan area since 1966. From 1969 through 1986, Metro used the Lowry Bombing Range Landfill ("Lowry") in Arapahoe County, Colorado, to dispose of processed sewage sludge.

---

[**]The Honorable David K.Winder, Senior District Judge, United States District Court for the District of Utah, sitting by designation.

Fireman's Fund Insurance Company ("FFIC") insured Metro under various policies from November 18, 1974 until April 1, 1984. The insured agreed to the following conditions of coverage:

(a) In the event of an Occurrence, written notice containing particulars sufficient to identify the insured and also reasonably attainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable.

(b) If a claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

Aplt. App. at 1274.

In June 1983, Metro received a notice and claim from the City and County of Denver ("Denver"), acting under authority from the United States Environmental Protection Agency ("EPA"), alleging Metro's responsibility for environmental contamination at Lowry under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"). I Aplt. App. at 103 ("Notice and Claim Against Person Liable for Costs and Damages Pursuant to 42 U.S.C. § 9607 and 9612"). The notice and claim sought to hold Metro liable for the CERCLA response costs.

In 1984, the EPA placed portions of Lowry on its "national priorities list,"

and followed up with a February 1985 letter to Metro informing it of its status under CERCLA as a "Potentially Responsible Party" ("PRP") for the contamination at Lowry. After receiving two more notice letters from the EPA, Metro finally notified FFIC of its potential liability in August 1988.

In May 1989, Metro filed an action for declaratory judgment and breach of contract against FFIC, seeking coverage under both the defense and indemnification provisions of the policies for past and future cleanup and response costs at Lowry. The court granted summary judgment for FFIC on the grounds that the EPA proceedings did not constitute a suit under the FFIC policy, and stayed the case.

In 1994, Metro was named as a defendant in a contribution action brought under CERCLA by the City and County of Denver. Aplt. App. at 273. At the conclusion of the CERCLA action, the stay on Metro's action against FFIC was lifted and the case proceeded to trial in October 1998.

At trial, the district court instructed the jury that a belief in nonliability was a justifiable excuse for late notice of a claim or suit. After finding that Metro's notice was untimely, but that its reasonable belief in nonliability excused the lateness, the jury returned a verdict in favor of Metro and against FFIC in the amount of $2,552,595.00 and judgment was entered. FFIC moved for post-trial relief, arguing that under the recently decided Haller v. Hawkeye Security

Insurance Co., 936 P.2d 601 (Colo. Ct. App. 1997), Metro's belief in nonliability was *not* a justifiable excuse for the untimely notice provided to FFIC. The district court granted the motion, vacated the jury verdict and ordered a new trial, Aplt. App. at 773, 831, but later reinstated the verdict after determining that the rule set forth in Haller did not apply retroactively, Aplt. App. at 886.

Discussion

## I. Haller represents Colorado law

First we examine the jury instruction given by the district court regarding Metro's belief in nonliability and its effect on untimely notice. The district court instructed the jury as follows:

> A failure to give timely notice of an occurrence, claim or suit is reasonably justified if the Plaintiff acting as a reasonably prudent person believes it is not liable for the damages.

Aplt. App. at 689.

We review the jury instructions de novo to determine whether, as a whole, they adequately apprised the jury of the issues and the governing law. United States v. Wolny, 133 F.3d 758, 765 (10th Cir. 1998).

It is a basic principle of Colorado law that "[i]nsurance contracts are to be construed according to the general rules for construction of contracts," Marez v. Dairyland Insurance Co., 638 P.2d 286, 289 (Colo. 1981), and that the words of

the contract are given a "reasonable and natural construction." Hansen v. Barmore, 779 P.2d 1360, 1362 (Colo. Ct. App. 1989). Metro's policy treats differently the requirements for post-occurrence and post-suit notice, requiring notice of an occurrence only "as soon as practicable," but requiring "immediate" notice of every "demand, notice, summons or other process." Aplt. App. at 1274. Rights and duties "flowing from an ... insurance policy are contractual in nature and are measured by the terms and conditions of the insurance contract to which the parties thereto have agreed." Marez, 638 P.2d at 288-89.

FFIC's right under the policy was to receive immediate notice from Metro of any claim made or suit brought. See Leadville Corp. v. U.S. Fid. & Guar. Co., 55 F.3d 537, 539-40 (10th Cir. 1995). Yet Metro notified FFIC nearly five years after receiving the notice and claim for CERCLA response costs from Denver–a delay that the jury concluded was untimely. Aplt. App. at 705. Once a claim or suit is received, the unambiguous terms of Metro's policy contain no exception for delayed notice based on a belief in nonliability. Late notice, absent a justifiable excuse, results in the forfeiture of coverage and, in this case, would relieve FFIC of any defense or indemnity obligations under the policy. Leadville, 55 F.3d at 540. This is true regardless of whether FFIC suffered prejudice from the delay. Id. It is against this backdrop that we assess Metro's argument that failure to abide by the notice provisions should be excused because of its

reasonable belief in nonliability.

A line of Colorado cases holds that provisions in an insurance policy requiring an insured to notify its insurer "may be set aside for substantial justification," Hansen, 779 P.2d at 1362, for example, when the insured has demonstrated "a justifiable excuse or extenuating circumstances explaining the delay." Graton v. United Security Insurance Co., 740 P.2d 533, 534 (Colo. Ct. App. 1987). A good-faith, reasonable belief in nonliability does qualify, in some circumstances, as a justifiable excuse for delayed notice. See e.g., Massachusetts Protective Ass'n v. Daugherty, 288 P. 888 (Colo. 1930); Colard v. Am. Family Mut. Ins. Co., 709 P.2d 11 (Colo. Ct. App. 1985); Barnes v. Waco Scaffolding & Equipment Co., 589 P.2d 505 (Colo. Ct. App. 1978). At the crux of this issue, however, is Haller v. Hawkeye Security Insurance Co., a case holding that, while a reasonable belief in nonliability justifiably excuses an insured's failure to give timely notice of an *occurrence*, it does not excuse late notice of a *claim or a suit* when the policy terms explicitly require prompt notice. 936 P.2d at 605. Since Metro gave untimely notice of a claim, not an occurrence, application of Haller's bright-line rule would negate the only excuse offered by Metro.

Haller applies if it accurately represents controlling law in Colorado and has retroactive effect. Haller is a decision by an intermediate appellate state court. In ascertaining Colorado state law, we shall rely on a decision by such a

court when it rests "its considered judgment upon the rule of law which it announces," and not disregard it "unless convinced by other persuasive data that the highest court of the state would decide otherwise." Sports Unlimited, Inc. v. Lankford Enterprises, Inc., 275 F.3d 996, 1000-01 (10th Cir. 2002) (internal quotations omitted).

According to Metro, Haller does not reflect the law in Colorado because it cannot be reconciled with more general pronouncements in cases like Colard, Waco and Daugherty that a belief in nonliability excuses late notice. However, Haller affirms this general principle, but further states that, as a matter of law, it is impossible to show a good-faith belief in nonliability following receipt of a demand, notice or claim. Haller, 936 P.2d at 605. Haller's specific rule refines, and does not contradict, the law of the earlier cases.

We can readily distinguish the cases that Metro claims are contradicted by Haller. First, most deal with the notice required after an occurrence, rather than that required after a claim or suit. See Daugherty, 288 P. 888 (late notice that insured committed suicide); ITT Specialty Risk Services v. Avis Rent A Car Systems, 985 P.2d 43 (Colo. Ct. App. 1998) (late notice of vehicle accident); Waco, 589 P.2d 505 (late notice of workplace accident). Furthermore, the insurance policies at issue in these cases required less urgent notice than the "immediate" notice required by the insureds' policy in Haller and in this case.

- 8 -

See Daugherty, 288 P. at 889 (post-occurrence notice required in a "reasonable time"); ITT Specialty Risk Services, 985 P.2d at 46 (post-occurrence notice required "promptly"); Waco, 589 P.2d 505 (post-occurrence notice required "as soon as practicable"). While a good-faith belief in nonliability may serve as a justifiable excuse after an occurrence, there is significant difference between post-occurrence notice and post-claim or post-suit notice.

The difference between post-suit and post-occurrence notice requirements was apparent in Waco, a pre-Haller case where the court suggested that the absence of any claim against the insured justified, in part, the failure to notify the insurer of an accident. Waco, 589 P.2d at 507-508. Further, once the insured was served a summons, the court suggested that the insured then had reason to believe in his potential liability. Id.

In Leadville, this court, applying Colorado law before Haller, found that language identical to that in Metro's policy unambiguously obligated the insured to forward suit papers immediately to the insurer. Leadville, 55 F.3d at 540-542. We held that after the insured received a complaint from the EPA and notification of potential CERCLA liability, its claimed belief in nonliability could not be reasonable and therefore could not excuse delayed notice. Id. at 541. Haller is consistent with this interpretation of Colorado law and strengthens our basis for finding, as we did in Leadville, that a belief in nonliability does not excuse

untimely notice after receipt of a claim or a suit when the insurance contract specifically requires immediate post-suit or post-claim notice.  See also, 13 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 192:82 (1999) ("Excuse is predicated, of course, on the insured providing notice as required by the policy after becoming aware that a claim will in fact be made.").

Colard is the only case cited by Metro involving untimely notice of a suit or a claim, but it too is distinguishable.  709 P.2d 11.  The untimely notice of a suit was excused in Colard because the insured, on the advice of his attorney and the agent of the insurer, mistakenly believed that his policy did not cover the negligent workmanship damages for which he was being sued.  709 P.2d at 15.  A reasonable, but mistaken, belief in the lack of policy coverage differs markedly from a belief in nonliability.  When a claim is received for a matter reasonably believed to be outside the ambit of coverage, failure to promptly notify the insurer may be excusable.  Colard, 709 P.2d at 15; see also Daugherty, 288 P. at 889 (justifiable delay where policy explicitly excluded suicide from coverage but state law required it).  When a claim is received involving a matter believed to be within the ambit of coverage, an insured cannot be excused for ignoring the clear-as-a-bell requirement to notify the insurer.  Haller, 936 P.2d at 605.  Metro has never taken the position that it thought there was no coverage, only that it believed in its nonliability.  We find Colard reconcilable with the principles of

- 10 -

Haller and Marez.

In concluding that a belief in nonliability is not an excuse for untimely notice after a claim or a suit, Haller's ruling was consistent with Colorado precedent, and a predictable development of Colorado law.

## II. Haller applies retroactively

The district court determined that Haller has only prospective application and therefore does not control this case. We review de novo the district court's state law determinations, including those regarding the retroactivity of a judicial decision. See Mid-America Pipeline Co. v. Lario Enter., Inc., 942 F.2d 1519, 1524 (10th Cir. 1991).

Colorado law adheres to the generally accepted presumption that judicial decisions will have retroactive application. Martin Marietta Corp. v. Lorenz, 823 P.2d 100, 111 (Colo. 1992), but "[u]nder certain circumstances" a judicial decision will receive prospective effect only. Id.

Whether a judicial decision will have retroactive effect is evaluated under the three-part test enunciated by the United States Supreme Court in Chevron Oil Co. v. Huson, 404 U.S. 97 (1971), and adopted by the Colorado Supreme Court in People in Interest of C.A.K., 652 P.2d 603, 607 (Colo. 1982). First, the decision, if it is not to be applied retroactively, must establish a new rule of law. Second, the merits of each case must be weighed by looking to the purpose and effect of

the rule in question and whether retroactive application will further or retard its operation. Third, the inequity imposed by retroactive application must be weighed to avoid injustice or hardship. C.A.K., 652 P.2d at 607.

A new rule is created "either by overruling clear past precedent on which litigants may have relied...or by deciding an issue of first impression whose resolution was not clearly foreshadowed." Chevron, 404 U.S. at 106-07.

Consideration of whether Haller created a new rule overlaps with our analysis above regarding whether Haller represents Colorado law. We determined that Haller did not break with precedent, but instead continued Colorado's longstanding practice of construing insurance contracts according to the general rules for construction of contracts, Marez, 638 P.2d at 289, and giving the words of the contract their "reasonable and natural construction." Hansen, 779 P.2d at 1362. Indeed, this court identified the Haller rule in Colorado law even before Haller was decided. Leadville, 55 F.3d 537.

Metro has not met the required threshold showing that Haller is a new rule. We therefore have no need to consider the remaining Chevron factors as a decision is presumed to have retroactive effect when it does not establish a new rule of law. Marinez v. Industrial Comm'n, 746 P.2d 552, 556-57 (Colo. 1987).

Haller applies to this case and it was therefore error for the district court to instruct the jury that it could excuse Metro's failure to give timely notice of a

claim or suit if Metro reasonably believed it was not liable for the damages.  Our determination that Metro's untimely notice cannot be excused because of a belief in nonliability does not resolve the issue of whether the late notice was substantially justified by other extenuating circumstances.  <u>Hansen</u>, 779 P.2d at 1362; <u>Graton</u>, 740 P.2d at 534.

Having decided that the improper jury instructions warrant reversal, we need not reach the issue regarding the district court's improper interpretation of the insurance policies' pollution exclusion clause.

REVERSED and REMANDED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge