MR. JUSTICE HODGES
delivered the opinion of the Court.
Plaintiff-appellant, Aspen Airways, Inc. (Aspen), commenced this action in the trial court for damages against the defendant-appellee, Rocky Mountain Airways, Inc. (RMA). As holder of a Public Utilities Commission (PUC) certificate of public convenience and necessity for transportation of persons by aircraft between the cities of Aspen and Denver, Aspen alleged that RMA’s transportation of persons by aircraft between the same cities pursuant to a PUC temporary authority was unlawful. In its complaint, Aspen maintained that the PUC did not have statutory authority to issue to RMA this temporary authority. The trial court held that the PUC had authority to grant this temporary authority to RMA and accordingly entered its judgment denying Aspen’s claim for damages. We affirm.
The parties agree substantially to the relevant facts. RMA was certified to furnish scheduled passenger service between Denver and Eagle. Aspen was certified to provide a like service between Denver and Aspen. In May 1967, RMA applied to the PUC for an extension of its certificate to permit it to operate a one-stop schedule between Denver and Aspen via Eagle.
Aspen appeared at PUC hearings held in August and September of 1967 to contest RMA’s application. On February 16, 1968, while a PUC decision on this application was pending, Aspen’s scheduled service was halted. According to Aspen, the sole cause was a strike by its employees; RMA contended that the break in service was caused also by aircraft maintenance problems of Aspen’s own making.
On February 16, 1968, RMA applied to the PUC for temporary authority to provide service between Denver and Aspen, both directly and via Eagle. It asserted that the stoppage of direct air carrier service between *287 Denver and Aspen during the height of the ski season justified an emergency grant of this authority to RMA.
On February 20, 1968, the PUC granted to RMA temporary authority to be effective until it made a final decision on RMA’s application for an extension. Aspen resumed its scheduled service in mid-March and on May 14 requested that RMA’s temporary authority be terminated. The temporary authority terminated by its own terms when the PUC on June 9 ruled favorably on RMA’s application for extension of its service to Aspen via Eagle.
On this appeal, Aspen makes two basic arguments: (1) the PUC lacked statutory authority to issue a grant of temporary authority, and (2) even if the PUC did have such authority, the summary ex parte procedure which it followed in issuing the grant violated due process.
On February 20, 1968, when the PUC issued this temporary authority, no statute specifically authorized the PUC to grant a temporary authority. Subsequently, the General Assembly enacted, effective July 1, 1969, what is now section 40-6-120, C.R.S. 1973.[1] This provision sets forth guidelines which the PUC must follow in granting a temporary authority. Among other things, it specifies that where an “immediate and urgent need” for carrier service exists, the grant of a temporary authority may be issued without hearings or other proceedings. It also designates the period of the grant’s validity, a maximum of 180 days, and establishes a procedure for providing advance notice and a hearing to interested parties in non-emergency situations. Rather than creating a new power in the PUC to issue temporary authority, section 40-6-120 merely codified and set guidelines with respect to an existing practice, which has been in effect for may years.
Although not expressly authorized by statue prior to 1969, this existing practice is authorized by the Colorado Constitution. Article XXV, *288 which was adopted in 1954, provides that all relevant regulatory powers currently held by the legislature and the general power to “regulate the facilities, service and rates and charges” of public utilities shall be vested in the PUC.[2] Article XXV thereby granted to the PUC as much authority as the legislature possessed prior to 1954. See Miller Bros., Inc. v. Public Utilities Commission, 185 Colo. 414, 525 P.2d 443 (1974).
The power to issue grants of temporary authority previously could have been exercised by the legislature, and therefore that power passed to the PUC after 1954. The General Assembly did not limit the PUC’s use of such authority until the passage of section 40-6-120, C.R.S. 1973, in 1969. Moreover, even in the absence of this express delegation of legislative powers, the PUC’s exercise of temporary authority appears fully authorized by Article XXV’s general grant to the PUC of “all power of regulate the . . . service” of public utilities, such as airline companies which provide transportation service to the public.
Aspen’s fallback position is that even if the PUC possessed this authority it was rendered void by the PUC’s failure to give Aspen notice and an opportunity to be heard before it granted this temporary authority. According to Aspen, the procedure utilized by the PUC was constitutionally defective as violating procedural due process.
We hold that, under the circumstances of this case, the PUC was justified in acting immediately and without notice to Aspen. An emergency existed because the only scheduled air carrier between Denver and Aspen had ceased all scheduled service at the height of the ski season. The PUC acted with full knowledge of this emergency situation. Also, prior to granting the temporary authority, the PUC had extensively considered RMA’s application for permanent service to Aspen, and its grant of authority expired automatically when a final decision was reached on this application. The requirements of procedural due process vary according to the exigencies of each factual setting. Cafeteria Workers v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The exigencies of the situation here justified the PUC procedure, and therefore, it did not violate procedural due process.
*289 In emergency situations, the current practice, as recognized by the legislature in section 40-6-120, C.R.S. 1973, is to permit the PUC to issue immediate temporary authority without notice and without an adversary hearing for a period not to exceed 15 days.
Lastly, we reject RMA’s contention on its cross appeal that the trial court erroneously dismissed its counterclaim against Aspen. We agree with the trial court’s grounds for dismissal of this counterclaim.
We affirm the trial court’s judgment.

 Section 40-6-120, C.R.S 1973, provides as follows:
“Temporary authority. (1) To enable the provision of carrier service for which there appears to be no immediate and urgent need to any point or within a territory having no carrier service capable of meeting such need, the commission may, in its discretion and without hearings or other proceedings, grant temporary authority for such service by a common carrier or a contract carrier by motor vehicle, as the case may be. Such temporary authority, unless suspended or revoked for good cause, shall be valid for such time as the commission specifies, but for not more than an aggregate of one hundred eighty days, and shall create no presumption that corresponding permanent authority will be granted thereafter.
“(4) No temporary authority or approval may be issued by the commission unless, under such general rules as the commission may prescribe governing the application therefor and notice thereof to interested or affected carriers, any such interested or affected carrier has been given five days’ notice of the filing of the application and afforded an opportunity to protest the granting thereof. If the commission is of the opinion that an emergency exists, it may issue temporary authority or approval at once by making specific reference in its order to the circumstances constituting the emergency, in which case no notice need be given, but any such emergency authority or approval shall expire no later than fifteen days after it was issued.”

 Article XXV of the Colorado Constitution provides in part as follows:
“In addition to the powers now vested in the General Assembly of the State of Colorado, all power to regulate the facilities, service and rates and charges therefor, including facilities and service and rates and charges therefor within home rule cities and home rule towns, of every corporation, individual, or association of individuals, wheresoever situate or operating within the State of Colorado, whether within or without a home rule city or home rule town, as a public utility, as is presently or as may hereafter be defined as a public utility by the laws of the State of Colorado, is hereby vested in such agency of the Slate of Colorado as the General Assembly shall be law designate.
“Until such time as the General Assembly may otherwise designate, said authority shall be vested in the Public Utilities Commission of the State of Colorado; . . .” (emphasis added.)