1 

2026 CO 6
 Public Service Company of Colorado d/b/a Xcel Energy, Petitioner/Cross-Respondent v. Outdoor Design Landscaping LLC, Respondent/Cross-Petitioner 
 and Francisco Cuevas, Respondent 
No. 23SC659
Supreme Court of Colorado
January 26, 2026

2

 Certiorari to the Colorado Court of Appeals Court of Appeals Case Nos. 22CA301 & 22CA1108. 
 Judgment Affirmed in Part and Vacated in Part 
 Attorneys for Petitioner/Cross-Respondent: Gordon Rees Scully Mansukhani, LLP Franz Hardy John R. Mann Greg S. Hearing, II Stephanie S. Brizel Abigail H. Kregor Denver, Colorado. 
 
3

 Attorneys for Respondent/Cross-Petitioner: Lambdin &Chaney, LLP L. Kathleen Chaney Amber F. Ju Eric D. Hevenor Denver, Colorado. 
 Attorneys for Respondent: Connelly Law, LLC Sean Connelly Denver, Colorado The Law Office of Sean McDermott LLC Sean M. McDermott, Denver, Colorado Stuart &Ward LLP Thomas R. Ward, Denver, Colorado. 
 Attorney for Amicus Curiae Black Hills Colorado Electric, LLC: Greg Sopkin Denver, Colorado. 
 Attorney for Amicus Curiae Colorado Rural Electric Association: Craig N. Johnson, Lakewood, Colorado 
 Attorneys for Amicus Curiae Colorado Trial Lawyers Association: Leventhal Puga Braley P.C. Nathaniel E. Deakins Julia T. Thompson, Denver, Colorado, Burg Simpson Eldridge Hersh &Jardine, P.C. Dean Batchelder Englewood, Colorado. 
 
4

 Attorneys for Amicus Curiae Edison Electric Institute: Davis Graham &Stubbs LLP Theresa Wardon Benz Cormac Bloomfield Denver, Colorado Vinson & Elkins LLP Jeremy C. Marwell Washington, District of Columbia. 
 JUSTICE GABRIEL delivered the Opinion of the Court, in which JUSTICE BOATRIGHT, JUSTICE HOOD, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER joined. 
 en banc 
 
5

 OPINION 
 GABRIEL, JUSTICE. [*] 
 ¶1 In this personal injury action between and among a contractor, Francisco Cuevas, and his company, Outdoor Design Landscaping LLC, on the one hand, and Public Service Company of Colorado d/b/a Xcel Energy ("PSCo"), on the other, PSCo has petitioned and Outdoor Design has cross-petitioned for certiorari from the court of appeals division's unanimous, published decision in Cuevas v. Public Service Co. of Colorado, 2023 COA 64M, 537 P.3d 418. In that case, the division concluded, as pertinent here, that (1) a limitation of liability clause contained in PSCo's tariff applied only to PSCo customers, guests of such customers, and those who contracted to work on the electric line at issue, and Cuevas did not fall within any of those categories; (2) the Public Utilities Commission ("PUC") lacked the authority to abrogate the common law duty owed by electric companies to non-customers; (3) Cuevas was not a "person" subject to the requirement in the High Voltage Safety Act ("HVSA") that advance notice be given before undertaking work near a power line; and (4) section 9-2.5-104(2), C.R.S. (2025), of the HVSA, which requires a contractor to indemnify persons liable to those injured by contact with a power line when the contractor did not give PSCo advance notice 
 
6

 of its work, contains no element of causation. Id. at ¶¶ 32-33, 41, 43, 537 P.3d at 426-28. 
 ¶2 We granted certiorari to consider three principal questions, namely, whether (1) the tariff's limitation of liability provision applies to bar Cuevas's claims; (2) Cuevas was subject to the HVSA's notification requirement; and (3) the relevant provision of the HVSA requires a causation analysis.[1] 
 ¶3 We now conclude as follows: 
 ¶4 First, assuming without deciding that the limitation of liability provision in the PSCo tariff is broad enough to include non-PSCo customers like Cuevas, the 
 
7

 PUC did not have the authority to approve a tariff limiting PSCo's liability to non-customers. 
 ¶5 Second, because Cuevas was not the contracting party (Outdoor Design was), he was not subject to the HVSA's notification requirement. 
 ¶6 And finally, section 9-2.5-104(2) of the HVSA does not require a causation analysis, and therefore Outdoor Design, which violated the HVSA's notification requirement, must indemnify PSCo for any liability incurred by it as a result of Cuevas's claims against it. 
 ¶7 Accordingly, we vacate the division's conclusion that the tariff, by its terms, does not extend to non-PSCo customers like Cuevas, but we otherwise affirm the division's judgment. 
 I. Facts and Procedural History 
 ¶8 Outdoor Design, a company owned by Cuevas, contracted with a homeowner to install Christmas lights on a spruce tree on her property. Although the top of the tree was located within twenty-six inches of a high voltage power line operated by PSCo, neither Outdoor Design nor Cuevas notified PSCo in advance of the planned work. 
 ¶9 Cuevas, among others, performed the work on Outdoor Design's behalf. While standing on a ladder and hanging the lights, Cuevas came into contact with the tree, which apparently had become "electrified" due to its contact with the 
 
8

 power line. Cuevas fell from the ladder to the ground and fractured his spine, leaving him with permanent injuries, including paraplegia. 
 ¶10 Cuevas sued PSCo for, among other things, negligence. He argued that PSCo had a duty to maintain the power lines and the spruce tree so that the tree would not pose a safety risk and that it had not done so, thereby causing Cuevas's injuries. 
 ¶11 PSCo moved to dismiss Cuevas's complaint, arguing that his negligence claim was barred by a limitation of liability provision contained in Tariff Sheet No. R87 of the PSCo Electric Tariff, Colo. PUC No. 8 ("Tariff Sheet R87"). Specifically, PSCo asserted that Tariff Sheet R87 provides that PSCo "shall not be held liable for injury to persons . . . caused by its lines . . . when contacted or interfered with by . . . trees . . . or other objects not the property of [PSCo]" unless those lines are "in a defective condition." The district court, however, denied this motion, concluding that the court was "without sufficient information . . . as to whether the line was defective, and what caused [Cuevas] to be electrocuted." In so ruling, the court observed that if the lines were in a defective condition, then Tariff Sheet R87 would not limit PSCo's liability. 
 ¶12 PSCo then answered Cuevas's complaint, asserting as defenses, among others, that Cuevas's claims were barred or limited by Tariff Sheet R87 and also by the HVSA, which imposes duties on certain parties to notify PSCo before 
 
9

 performing work that could reasonably be expected to bring them or their equipment within ten feet of PSCo's high voltage overhead lines. 
 ¶13 PSCo also filed a third-party complaint against Outdoor Design, alleging that Outdoor Design had not complied with section 9-2.5-103(1), C.R.S. (2025), of the HVSA, which required the company to provide PSCo with prompt notice of its pending work and to reach "satisfactory mutual arrangements" before starting the work. PSCo further alleged that as a result of this statutory violation, Outdoor Design was obligated to indemnify it for any liability incurred by PSCo as a result of Cuevas's claim. See § 9-2.5-104(2). 
 ¶14 After the parties had conducted discovery, PSCo moved for summary judgment against Cuevas under both the liability-limitation provision contained in Tariff Sheet R87 and the HVSA, and against Outdoor Design under the HVSA. As pertinent here, PSCo argued that Tariff Sheet R87 limited PSCo's liability for injury to "persons" caused by its lines when contacted or interfered with by trees or other objects not the property of PSCo, which, it asserted, was what had occurred here. PSCo further contended that because Cuevas had violated section 9-2.5-103's notification requirement, as a matter of law, PSCo did not owe him any duty of care and therefore his claims against PSCo necessarily failed. Finally, PSCo argued that, in light of Outdoor Design's own violation of the HVSA's notification 
 
10

 requirement, section 9-2.5-104(2) rendered that company liable to PSCo for any liability incurred by PSCo due to contact with its power lines. 
 ¶15 Outdoor Design then filed a cross-motion for summary judgment, asserting, as pertinent here, that the HVSA did not apply because no evidence suggested that on the date of the incident at issue, Cuevas or any other person, equipment, tools, or materials came within ten feet of the power line while performing the work. To the contrary, in Outdoor Design's view, the evidence established that none had done so. 
 ¶16 The district court subsequently granted PSCo's motion for summary judgment against Cuevas, concluding, as a matter of law, that Tariff Sheet R87 barred Cuevas's claims. In support of this ruling, the court rejected Cuevas's contention that Tariff Sheet R87's limitation of liability provision applied only to PSCo customers and not to third parties like Cuevas. The court observed that Tariff Sheet R87 distinguishes between "[t]he Customer" and "persons" and uses those terms in distinct ways. Specifically, the tariff places responsibility for any injury "to persons" on "the Customer" and limits PSCo's liability for injury "to persons." The court noted that it had to assume that this language choice was deliberate and that the PUC intended the tariff to limit PSCo's liability to more than just customers. 
 
11

 ¶17 The district court, however, denied PSCo's summary judgment motion to the extent that the motion asserted that Cuevas's claims were barred due to his failure to give notice under the HVSA. The court concluded that the HVSA applies only to persons or business entities that had contracted to perform the work. Here, Cuevas was not the contracting party (Outdoor Design was). So, the HVSA did not bar Cuevas's claims. 
 ¶18 Turning then to PSCo's assertions as to Outdoor Design, the district court concluded that Outdoor Design was the contracting party and that it had failed to notify PSCo of the proposed work, as required by section 9-2.5-103(1), but then permitted Cuevas to perform the work, thus violating section 9-2.5-102(1), C.R.S. (2025). The court further determined that because Outdoor Design was required to refrain from the work at issue until safety arrangements had been made, the HVSA shifted liability to that company for any liability that PSCo had incurred as a result of the accident. 
 ¶19 Finally, the court denied Outdoor Design's cross-motion for summary judgment, noting that the relevant question was not whether the company's employees or tools actually came within ten feet of the line, but whether it could reasonably be expected that they would. On the evidence presented, the court concluded that this condition was satisfied and Outdoor Design was thus required to provide notice under the HVSA. 
 
12

 ¶20 All of the parties appealed, and a division of the court of appeals ultimately affirmed in part, reversed in part, and vacated in part the district court's judgment. Cuevas, ¶ 65, 537 P.3d at 431. As pertinent here, the division reversed the district court's entry of summary judgment against Cuevas on the tariff issue, concluding that (1) tariffs have "contractual roots" and regulate a utility's provision of services to customers but not a utility's interaction with non-customers like Cuevas; (2) the legislature had not granted to either PSCo or the PUC "the authority to abrogate the common law duty that electric companies owe to persons who are not customers or using a customer's electric service"; and (3) even if the PUC had such authority, Tariff Sheet R87 "does not contain a clear expression of intent to abrogate the common law heightened duty of care imposed on electrical utilities." Id. at ¶¶ 21, 32-33, 35-36, 537 P.3d at 425-27. The division, however, affirmed the district court's denial of summary judgment against Cuevas under the HVSA, agreeing that the HVSA's notification requirement applies only to the contracting party and that Cuevas was not that party. Id. at ¶¶ 43, 46, 537 P.3d at 428. Finally, the division affirmed the district court's entry of summary judgment against Outdoor Design, concluding, as pertinent here, that (1) the HVSA does not "contain a causation element regarding any contact or resulting injury"; (2) Outdoor Design had failed to notify PSCo of the planned work and proceeded with the work nonetheless, in violation of the HVSA; and (3) in light of that 
 
13

 statutory violation, the HVSA requires violators like Outdoor Design to indemnify utilities such as PSCo for any liability incurred due to injuries stemming from contact with the utility's power lines. Id. at ¶¶ 41, 49-52, 537 P.3d at 428-29. In so concluding, the division determined that, given the undisputed facts, the district court had correctly found that Outdoor Design should have reasonably expected that the planned work would require its employees or their equipment to come within ten feet of the overhead lines. Id. at ¶ 51, 537 P.3d at 429. 
 ¶21 Both PSCo and Outdoor Design petitioned this court for certiorari review, and we granted their respective petitions. 
 II. Analysis 
 ¶22 We begin by setting forth our standard of review. Next, we address the applicability of the limitation of liability provision in the circumstances presented here, including determining whether the PUC had the authority to approve a limitation of liability provision that would bind non-customers of a utility. We then consider whether Cuevas, as a non-contracting party, was subject to the HVSA's notification requirement. Finally, we review whether section 9-2.5-104(2) of the HVSA requires a causation analysis. 
 A. Standard of Review 
 ¶23 Constitutional and statutory interpretation present questions of law that we review de novo. Kulmann v. Salazar, 2022 CO 58, ¶ 15, 521 P.3d 649, 653. In 
 
14

 interpreting constitutional and legislative provisions, we seek to determine and effectuate the intent of those who adopted those measures. Id. at ¶ 16, 521 P.3d at 653. To do so, we begin with the language employed, and we give words and phrases their plain and ordinary meanings. Id. 
 ¶24 If the language of the provision is unambiguous, then we apply it as written and need not turn to other tools of construction. Id. at ¶ 17, 521 P.3d at 653. If, however, the provision is ambiguous, then we may look to the intent of those who adopted the provision, the circumstances of its adoption, and the possible consequences of different constructions. Id. A provision is ambiguous when it is reasonably susceptible of multiple interpretations. Elder v. Williams, 2020 CO 88, ¶ 18, 477 P.3d 694, 698. 
 ¶25 We review a grant of summary judgment de novo. Rocky Mountain Expl., Inc. v. Davis Graham &Stubbs LLP, 2018 CO 54, ¶ 27, 420 P.3d 223, 229. When the material facts are undisputed, summary judgment is appropriate only when the pleadings and supporting documents show that the moving party is entitled to judgment as a matter of law. Id.; accord C.R.C.P. 56(c). In determining whether summary judgment is warranted, a court must grant the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and it must resolve all doubts against the moving party. Rocky Mountain Expl., Inc., ¶ 27, 420 P.3d at 229. 
 
15

 B. Applicability of the Limitation of Liability Provision 
 ¶26 PSCo contends that the division erred in concluding that (1) the limitation of liability provision in Tariff Sheet R87, by its terms, applies only to a utility's customers (and therefore not to a contractor like Cuevas); and (2) the PUC lacked the authority to approve a tariff limiting liability in circumstances like those present here. 
 ¶27 We need not resolve the first question because even assuming without deciding that the liability-limiting language of Tariff Sheet R87 is broad enough to cover non-utility customers like Cuevas, we conclude that the PUC did not have the authority to approve a tariff limiting the liability of utilities to non-customers of the utility. 
 ¶28 Article XXV of the Colorado Constitution provides, in pertinent part, "[A]ll power to regulate the facilities, service and rates and charges therefor . . . as a public utility . . . is hereby vested in such agency of the State of Colorado as the General Assembly shall by law designate," and "[u]ntil such time as the General Assembly may otherwise designate, said authority shall be vested in the [PUC]." 
 ¶29 Similarly, section 40-3-102, C.R.S. (2025), provides, in pertinent part: 
 

 The power and authority is hereby vested in the [PUC] . . .
 and it is hereby made its duty to adopt all necessary rates,
 charges, and regulations to govern and regulate all rates,
 charges, and tariffs of every public utility of this state to
 correct abuses; . . . to generally supervise and regulate
 every public utility in this state; and to do all
 

 
16

 

 things . . . which are necessary or convenient in the
 exercise of such power....
 

 ¶30 As our case law makes clear, the PUC's authority to regulate public utilities in this state is broad. City of Montrose v. Pub. Utils. Comm'n, 629 P.2d 619, 622 (Colo. 1981). It is not, however, unlimited. Id. By way of example, under both article XXV of our constitution and section 40-3-102, the PUC has "a general responsibility to protect the public interest regarding utility rates and practices." City of Montrose, 629 P.2d at 624. 
 ¶31 We cannot agree with PSCo, however, that the PUC's authority is so broad as to encompass anything that may somehow impact a utility's rates. Were we to conclude that it is, then because virtually everything can be said to impact rates, the PUC's authority would be essentially limitless. In particular, if, as PSCo argues, a utility's liability exposure always implicates rates, then nothing would preclude the PUC from authorizing a tariff granting a utility complete immunity from any and all liabilities. In our view, the PUC's authority does not reach that far, and it particularly does not allow the PUC to limit a utility's liability to non-customers. 
 ¶32 A tariff is not a state statute. U S W. Commc'ns, Inc. v. City of Longmont, 948 P.2d 509, 516 (Colo. 1997). It is "a publicly filed document that sets forth the rates a public utility will charge and the rules and regulations it must follow." 
 
17

 Carestream Health, Inc. v. Colo. Pub. Utils. Comm'n, 2017 CO 75, ¶ 2, 396 P.3d 669, 670. 
 ¶33 In light of the foregoing, we have cited with approval a court of appeals division's conclusion that a tariff limiting a utility company's liability to a customer may extinguish the customer's conflicting common law remedies. U S W. Commc'ns, Inc., 948 P.2d at 516 (citing Shoemaker v. Mountain States Tel. &Tel. Co., 559 P.2d 721, 723 (Colo.App. 1976)). But we are aware of no applicable authority upholding a tariff's limitation of liability to a non-customer, and case law from other jurisdictions persuasively indicates that, absent an express or necessarily implied grant of authority to the regulatory body overseeing public utilities, a regulatory body may not adopt such a provision in a tariff. 
 ¶34 For example, in Tyus v. Indianapolis Power & Light Co., 134 N.E.3d 389, 395 (Ind.Ct.App. 2019), the plaintiffs suffered severe injuries when their vehicle was struck by another vehicle at an intersection at which the lighting and traffic signals were inoperable. The Indiana Utility Regulatory Commission ("IURC") had legislative authority to set rates for regulated public utilities, and an electric utility, the Indianapolis Power &Light Company ("IPL"), was responsible for operating traffic signals in Indianapolis. Id. at 396, 405, 407. As relevant here, the IURC had approved a tariff that contained a liability release stating, "[IPL] shall not be liable for damages resulting to the Customer, or to third persons, from the use of 
 
18

 electricity, [or the] interruption of service or supply . . . unless due to willful default or neglect on the part of [IPL]." Id. at 397 (first and third alterations in original) (emphasis omitted). 
 ¶35 The plaintiffs sued IPL for negligence, and IPL subsequently moved for judgment on the pleadings, asserting that the plaintiffs' claims were barred by the above-quoted liability release. Id. at 393-94. The plaintiffs responded that the tariff exceeded the lawful bounds of the IURC's jurisdiction because that agency did not have the authority to rewrite the common law of torts and thereby immunize a public utility from claims by non-customer third parties. Id. at 404. 
 ¶36 The court agreed with the plaintiffs. Id. at 406-08. The court began by explaining that the legislature may delegate rulemaking powers to an administrative agency only if that delegation is accompanied by sufficient standards to guide the agency in exercising its statutory authority. Id. at 406. In the case before it, the court perceived no evidence that the legislature had given or intended to give the IURC the authority to immunize IPL from liability for injuries caused by IPL's negligence to non-customers. Id. The court further observed that any doubt regarding the IURC's authority was to be resolved against a finding of such authority, particularly given that "immunity is the exception and not the rule." Id. at 406-07. Finally, the court noted that public policy supported its determination because IPL's position suggested that it was entitled to greater 
 
19

 immunities than governmental entities enjoyed for the same undertaking. Id. at 407. 
 ¶37 In our view, the reasoning in Tyus applies with equal force in this case. Similar to the circumstances before the court in Tyus, here, we perceive nothing that would allow us to conclude that either article XXV of our constitution or section 40-3-102 has granted the PUC the authority to abrogate the common law by limiting PSCo's liability for injuries caused by its own negligence to non-customers. As noted above, although both article XXV and section 40-3-102 grant broad authority to the PUC to regulate utilities' facilities, services, rates, and charges, nothing in those provisions either expressly or by necessary implication grants the PUC the authority to limit a utility's liability to non-customers. And as in Tyus, absent any indication that the framers of our constitution or our legislature intended to grant that authority, we deem it appropriate to resolve any doubt against such authority, particularly when it would allow the PUC to abrogate an injured non-customer's common law rights. See Banner Health v. Gresser, 2025 CO 60M, ¶ 17, P.3d ("To abrogate common law, the legislature must manifest its intent to do so expressly or by clear implication, and we strictly construe statutes that derogate from common law."); Vigil v. Franklin, 103 P.3d 322, 327 (Colo. 2004) (same). 
 
20

 ¶38 Accordingly, we conclude that the PUC had no authority to issue a tariff limiting PSCo's liability for its negligent acts to non-customers. We, however, express no opinion as to whether the PUC could properly issue a tariff limiting a utility's liability to the utility's customers. 
 ¶39 We are not persuaded otherwise by PSCo's contention that persuasive case law from other jurisdictions mandates a contrary result. In our view, the authorities on which PSCo relies are distinguishable because those cases involved either tort claims by the utility's customers or claims by non-customers for economic injuries resulting from the use or interruption of a utility's services. See, e.g., US Airways, Inc. v. Qwest Corp., 361 P.3d 942, 944, 947-49 (Ariz.Ct.App. 2015) (concluding that a liability limitation in a public utility's tariff barred a non-customer's claim for damages based on an alleged negligent telecommunication service interruption), aff'd, 385 P.3d 412 (Ariz. 2016); Pac. Bell v. Colich, 244 Cal.Rptr. 714, 715, 718 (Cal.Ct.App. 1988) (concluding that a tariff's limitation of liability provision barred a non-customer from seeking equitable indemnification for ordinary negligence from a concurrently negligent telephone utility because the damages sought by the allegedly injured party from the non-customer and for which the non-customer sought indemnification ere for economic losses arising exclusively from an interruption to the injured party's telephone service); CenterPoint Energy Res. Corp. v. Ramirez, 640 S.W.3d 205, 207, 216 
 
21

 (Tex. 2022) (concluding that a liability limitation in a utility tariff barred the utility's liability for damages suffered by a residential customer's houseguests when the evidence established that the guests had used the utility's services, thereby rendering them consumers of such services). 
 ¶40 Nor are we persuaded that the tariff itself affords a sufficient limiting principle regarding the PUC's authority. The liability-limiting provision in Tariff Sheet R87 applies to "persons," which could preclude an essentially limitless range of individuals or entities from seeking redress for PSCo's negligent acts. Nor do we view the liability limitation's exception for circumstances in which a utility's lines "are in a defective condition" to provide an adequate limiting principle because, even with such a limitation, the tariff would abrogate a broad swath of non-customer's common law rights. 
 ¶41 Finally, PSCo does not point us to any principle for deciding when a tariff would be sufficiently tailored to support enforcement of a liability-limitation provision like that at issue here. To the contrary, for the reasons set forth above, PSCo's construction of the tariff, in which virtually any activity would implicate the PUC's ratemaking authority, would afford the PUC essentially limitless regulatory power, including the power to grant utilities full immunity from liability to any injured persons or entities (because any liability could, of course, 
 
22

 impact a utility's economic health, thereby implicating the rates that the utility must charge). 
 ¶42 For these reasons, we agree with the division below that the PUC lacked the authority to approve a tariff limiting PSCo's liability to a non-customer like Cuevas in the circumstances presented here. 
 C. HVSA's Notification Requirement 
 ¶43 PSCo next contends that the division erred in holding that Cuevas was not a "person" subject to the HVSA's notification requirement under section 9-2.5-102(1). We are not persuaded. 
 ¶44 Section 9-2.5-102(1), provides, in pertinent part: 
 

 [A] person or business entity shall not, individually or
 through an agent or employee, perform or require any other
 person to perform any function or activity upon any land,
 building, highway, or other premises if at any time during
 the performance of any function or activity it could
 reasonably be expected that the person performing the
 function or activity could move or be placed within ten feet
 of any high voltage overhead line or that any equipment, part
 of any tool, or material used by the person could be brought
 within ten feet of any high voltage overhead line during the
 performance of any function or activity.
 

 ¶45 Notwithstanding the foregoing, section 9-2.5-103(1) allows a "person or business entity" to perform such work, but only if the person or business entity promptly notifies the public utility of the work to be performed and if "satisfactory mutual arrangements . . . have been made between the public utility operating the lines and the person or business entity responsible for performing the work." 
 
23

 ¶46 Finally, section 9-2.5-101(4), C.R.S. (2025), defines "[p]erson or business entity" as "a party contracting to perform any function or activity upon any land, building, highway, or other premises." 
 ¶47 Reading these provisions together makes clear that the HVSA places the burden of notification solely on the party contracting to perform the work that is reasonably expected to come within ten feet of a utility's high voltage line. Here, however, it is undisputed that Cuevas was not the party contracting to perform the work at issue. Outdoor Design was the contracting party. 
 ¶48 Moreover, we perceive nothing in the HVSA that would allow us to read "person or business entity" in section 9-2.5-103(1)'s notification requirement to include employees of the business entity that contracted to do the work. To the contrary, the HVSA shows that when the legislature intended to include agents or employees, it did so expressly. See, e.g., § 9-2.5-101(1) (using the term "employee," in contrast to the language in section 9-2.5-101(4) concerning a party contracting to perform work); § 9-2.5-102(1) (referring to a person or business entity's agents or employees, in contrast to the language concerning the party contracting to perform work). 
 ¶49 Accordingly, we conclude that the division correctly determined that Cuevas was not a "person" subject to the HVSA's notification requirement. See Mladjan v. Pub. Serv. Co. of Colo., 797 P.2d 1299, 1301 (Colo.App. 1990) (concluding 
 
24

 that a person who was injured when he drove the extended bed of a dump truck into high voltage power lines was not a "person or business entity" within the meaning of section 9-2.5-102(1) because he was a city employee and not a contracting party). 
 D. Causation Requirement 
 ¶50 Finally, Outdoor Design contends that the division erroneously read out of section 9-2.5-104(2) the words "results in," "caused by the contact," and "due to the contact" when it interpreted that section as not containing a causation element. 
 ¶51 Section 9-2.5-104(2) provides, in pertinent part: 
 

 If a violation of this article results in physical or
 electrical contact with any high voltage overhead line, the
 person or business entity violating this article shall be
 liable to the owner or operator of the high voltage overhead
 line for . . . the liability incurred by the owner or
 operator due to the contact.
 

 ¶52 Outdoor Design contends that, under section 9-2.5-104(2)'s plain language, to establish Outdoor Design's indemnity obligation, PSCo was required to prove that any violation of the HVSA's notice provision caused Cuevas's injuries. We disagree. 
 ¶53 As noted above, section 9-2.5-102(1) of the HVSA prohibits a business entity from performing or requiring another person to perform work if it reasonably could be anticipated that the person or business entity performing such work or their equipment could be brought within ten feet of any high voltage overhead 
 
25

 line during the performance of the work. Section 9-2.5-103(1), in turn, permits a person or entity to perform the work, but only if they promptly notify the public utility operating the high voltage overhead line and if the parties make satisfactory mutual arrangements for the performance of the work. 
 ¶54 As these provisions make clear, if a person or entity subject to the HVSA's notification requirement does not provide the required notice, then that person or entity is precluded from performing the work at issue and no injury could possibly have occurred. 
 ¶55 As a result, we agree with the division that section 9-2.5-104(2) does not require a separate causation analysis. The notification violation itself was the cause of the injury because absent the violation, the work would not have been performed and the injury would not have occurred. 
 III. Conclusion 
 ¶56 For these reasons, we conclude that (1) the PUC lacked the authority to approve a tariff limiting PSCo's liability for its own negligence to non-customers of the utility; (2) Cuevas, who was not the contracting party for the work at issue, was not subject to the HVSA's notification requirement; and (3) section 9-2.5-104(2) of the HVSA does not require a causation analysis, and therefore Outdoor Design, which violated the HVSA's notification requirement, must 
 
26

 indemnify PSCo for any liability incurred by it as a result of Cuevas's claims against it. 
 ¶57 Accordingly, we need not reach and therefore vacate the portion of the division's judgment concluding that Tariff Sheet R87, by its terms, does not extend to non-PSCo customers like Cuevas, but we otherwise affirm the division's judgment. 
 
27

 MARQUEZ, CHIEF JUSTICE dissenting. 
 ¶58 Although the majority does not directly answer whether the liabilitylimiting language of Tariff Sheet No. R87 of the PSCo Electric Tariff, Colo. PUC No. 8 ("Tariff Sheet R87") covers non-customers, Maj. op. ¶ 27, I agree with the district court's conclusion that the provision extends to non-customers like Francisco Cuevas. As the district court noted, Tariff Sheet R87 uses the terms "[t]he Customer" and "persons" in distinct ways. For example, the tariff places responsibility for any injury "to persons" on "[t]he Customer" but limits Public Service Company of Colorado's ("PSCo") liability for injury "to persons." The plain language of the liability-limiting provision in Tariff Sheet R87 thus precludes a utility's liability-such as PSCo's-to any person, for injuries "caused by [PSCo's] lines or equipment when contacted or interfered with by ladders, . . . trees, . . . or other objects not the property of [PSCo], which . . . are in close proximity to [PSCo's] lines and equipment, unless said lines and equipment are in a defective condition." Because we must assume that the language choice was deliberate and that the Public Utility Commission ("PUC") intended the tariff to limit PSCo's liability to all "persons" and not just customers, I believe that the plain language of Tariff Sheet R87 precludes PSCo's liability to non-customers like Cuevas. 
 
28

 ¶59 Moreover, I disagree with the majority's conclusion that this provision is unlawful because it exceeds the PUC's legal authority. Maj. op. ¶¶ 27, 31. To the contrary, the approval of a narrowly tailored liability-limiting provision in a utility's tariff falls well within the PUC's broad authority over utilities regulation, even when that provision protects the utility against liability to non-customers. I reach this conclusion for three reasons. 
 ¶60 First, the majority's stringent limitation on the PUC's power runs contrary to the plenary authority over utilities regulation conferred to the PUC by article XXV of the Colorado Constitution. Article XXV expressly imbues the PUC with "all power" over utilities regulation, including "the powers now vested in the General Assembly." Colo. Const. art. XXV (emphasis added). The PUC's exceptionally broad authority under article XXV is subject only to restrictions that "may be imposed by the legislature." City of Montrose v. Pub. Utils. Comm'n, 732 P.2d 1181, 1186 (Colo. 1987). As relevant here, although it has the power to do so, the legislature has not restricted the PUC's authority to approve tariff provisions that limit a utility's liability to non-customers. Accordingly, the PUC retains such authority. The majority's decision to the contrary runs afoul of the plain language of article XXV. 
 ¶61 Second, we need not explore the outer limits of the PUC's express constitutional authority under article XXV to conclude that the narrow provision 
 
29

 at issue here falls squarely within the scope of that authority. Liability-limiting tariff provisions deemed unlawful by other jurisdictions generally feature broad grants of immunity from liability to any third person for any act of pure negligence. See, e.g., Tyus v. Indianapolis Power &Light Co., 134 N.E.3d 389, 397 (Ind.Ct.App. 2019); Heritage Tractor, Inc. v. Evergy Kan. Cent., Inc., 552 P.3d 1266, 1281 (Kan.Ct.App. 2024). By contrast, PSCo's tariff provision precludes PSCo's liability only to those injured as a result of contact with objects, like ladders in trees, when they are in close proximity to PSCo's power lines or equipment. And it specifically preserves PSCo's liability when its power lines or equipment are defective. The narrow scope of this tariff provision places it squarely among the kinds of liability-limiting provisions that regulatory authorities, like the PUC, have the power to approve. 
 ¶62 Finally, the majority's decision fails to appreciate the PUC's unique role in utilities regulation. The PUC enjoys broad discretion to regulate utilities in a manner that properly balances the multiple competing interests involved in ratemaking. See CF&I Steel, L.P. v. Pub. Utils. Comm'n, 949 P.2d 577, 584 (Colo. 1997). By constraining the PUC's authority to impose limits on a utility's tort liability, even though such limits are "an inherent part of the rate," W. Union Tel. Co. v. Esteve Bros. &Co., 256 U.S. 566, 571 (1921), the majority compromises the 
 
30

 PUC's ability to ensure that Coloradans maintain access to affordable and safe electricity. 
 ¶63 For these reasons, I respectfully dissent.[1] 
 I. PSCo's Tariff Provision Falls Within the PUC's Broad Constitutional Authority Over Utilities Regulation 
 ¶64 The majority's holding is premised on its assertion that neither article XXV nor section 40-3-102, C.R.S. (2025), expressly or impliedly grants the PUC the power to approve tariffs that limit a utility's liability to non-customers. Maj. op. ¶¶ 27, 31, 33. But the majority's approach has it backwards. The question is not whether article XXV or section 40-3-102 grants the PUC power to limit a utility's liability to non-customers, but rather, whether either provision restricts the PUC's authority to do so. 
 ¶65 Article XXV delegates plenary authority over utilities regulation directly to the PUC. Specifically, it confers to the PUC "all power" to regulate utilities: 
 

 In addition to the powers now vested in the General
 Assembly of the State of Colorado, all power to regulate the
 facilities, service and rates and charges therefor,
 including facilities and service and rates and charges
 therefor within home rule cities and home rule towns, of
 every corporation, individual, or association of individuals,
 wheresoever situate or
 

 
31

 

 operating within the State of Colorado, whether within or
 without a home rule city or home rule town, as a public
 utility, as presently or as may hereafter be defined as
 a public utility by the laws of the State of Colorado, is
 hereby vested in such agency of the State of Colorado as the
 General Assembly shall by law designate.
 

 Colo. Const. art. XXV (emphases added). The provision goes on to explain that "[u]ntil such time as the General Assembly may otherwise designate," the plenary authority described in article XXV "shall be vested in" the PUC. Id. 
 ¶66 This court has recognized that article XXV "vests 'all power to regulate' public utilities in the PUC unless and until the general assembly designates another agency to perform that function." City of Durango v. Durango Transp., Inc., 807 P.2d 1152, 1158 (Colo. 1991) (quoting Colo. Const. art. XXV). Thus, unlike typical regulatory bodies, the PUC does not derive its authority over public utilities from the legislature; instead, its authority stems directly from the constitution. See Richard B. Collins &Dale A. Oesterle, The Oxford Commentaries on the State Constitutions of the United States: The Colorado State Constitution 418 (2d ed. 2020) (describing article XXV's "delegation to the PUC of full legislative discretion" as "[a] bit unusual"); compare Colo. Const. art. XXV, with Colo. Const. art. IX, § 1(1) ("The general supervision of the public schools of the state shall be vested in a board of education whose powers and duties shall be as now or hereafter prescribed by law." (emphasis added)). In fact, under article XXV, the PUC has "as 
 
32

 much authority as the legislature possessed prior to 1954"[2] with respect to the regulation of public utilities. Aspen Airways, Inc. v. Rocky Mountain Airways, Inc., 584 P.2d 629, 631 (Colo. 1978). Accordingly, the PUC's authority in this area is plenary, subject only to restrictions that "may be imposed by the legislature." City of Montrose, 732 P.2d at 1186; see also Collins &Oesterle, supra, at 418 (noting that the PUC exercises "full legislative discretion until the general assembly provides otherwise").[3] 
 
33

 ¶67 Before today, we had consistently applied article XXV with this interpretation. In Aspen Airways, for example, we held that article XXV permitted the PUC to temporarily authorize an airline to provide service between Aspen and Denver, reasoning that the General Assembly could have done so prior to 1954 and had not, at the relevant time, acted to limit the PUC's authority to exercise the same power. 584 P.2d at 630-31. 
 ¶68 In contrast, in Mountain States Legal Foundation v. Public Utilities Commission, 590 P.2d 495,497 (Colo. 1979), we acknowledged that the PUC lacked the authority to approve reduced rates for low-income elderly and disabled customers only because the General Assembly had specifically restricted the PUC's power "to order preferential utility rates to effect social policy." (Citing the legislature's enactment of section 40-3-106(1), C.R.S. (1973), and section 40-3-102, C.R.S. (1973)). 
 ¶69 Here, however, the General Assembly has not acted to restrict the PUC's authority to limit a utility's tort liability to non-customers. And because the legislature has had the power to limit tort liability since well before 1954, see, e.g., Collard v. Hohnstein, 174 P. 596, 596-97 (Colo. 1918) (indicating that the legislature may abrogate common-law remedies in statute provided that the statute is sufficiently explicit), so, too, has the PUC since the enactment of article XXV. 
 
34

 Aspen Airways, 584 P.2d at 631; see also Shoemaker v. Mountain States Tel. &Tel. Co., 559 P.2d 721, 723 (Colo.App. 1976) (noting that tariffs created through properly delegated legislative authority extinguish any inconsistent common-law remedy). Accordingly, the PUC may -until the General Assembly legislates otherwise- approve a tariff that limits a regulated utility's tort liability to non-customers.[4] 
 ¶70 In sum, the majority's insistence on an express grant of authority to the PUC to limit a utility's liability to non-customers fails to account for the plain language of article XXV of the Colorado Constitution. It is not for this court to impose restrictions on the PUC's constitutionally derived plenary authority; that discretion lies with the General Assembly. The majority's decision today thus invades the legislature's exclusive role in this area. See Colo. Const. art. XXV (vesting authority in the PUC "[u]ntil such time as the General Assembly may otherwise designate" (emphasis added)). 
 
35

 ¶71 I am also unpersuaded by the majority's reliance on case law from other jurisdictions to inform its interpretation of article XXV. See Maj. op. ¶¶ 34-37. The Indiana Court of Appeals' reasoning in Tyus, for example, is unhelpful. Indiana's legal framework differs significantly from Colorado's. Unlike Colorado, Indiana law expressly provides that the state regulatory commission "shall establish reasonable rules and regulations to govern the relations between public utilities and any or all classes of their customers." Ind. Code § 8-1-2-34.5(a) (West 2025) (emphasis added); see also Tyus, 134 N.E.3d at 402 ("[A]ll rules and regulations covering the relationship between the customer and the public utility shall be filed by each public utility in the office of the [IURC]." (second alteration in original) (quoting 170 Ind. Admin. Code 4-1-29)). This scope of authority prescribed to the Indiana regulatory commission is quite different from article XXV's plenary grant of authority to the PUC, confirmed by the broad grant of "power and authority" to the PUC to regulate utilities found in section 40-3-102. It is therefore unreasonable to conclude, given Indiana's specifically limited grant of authority to its public utility regulator, that the Indiana Court of Appeals' reasoning in Tyus "applies with equal force" to article XXV or section 40-3-102. See Maj. op. ¶ 37. 
 ¶72 In sum, article XXV directly delegates plenary authority over utilities regulation to the PUC. Absent legislation to the contrary, that authority includes the power to approve tariffs limiting a utility's liability, including to 
 
36

 non-customers. Because the General Assembly has not acted to restrict the PUC's authority to do so, I would hold that the PUC's ability to approve a tariff provision limiting a utility's liability to non-customers fits comfortably within its plenary authority directly conferred by article XXV of the Colorado Constitution. 
 II. PSCo's Tariff Provision Narrowly Limits PSCo's Liability to Non-Customers 
 ¶73 As discussed, the plain language of article XXV makes clear that the PUC's plenary authority over utilities regulation includes the power to approve a tariff provision that limits a utility's liability to a non-customer, unless and until the General Assembly limits that power. The majority expresses concern that construing article XXV to confer such power to the PUC would allow the PUC to approve tariffs exempting utilities from liability to any non-customer for any reason. Maj. op. ¶ 31. But the conclusion that the specific tariff provision at issue here falls comfortably within the PUC's authority does not require this court to explore the outer bounds of that authority. 
 ¶74 The tariff provision here is narrow in scope: It limits PSCo's liability to non-customers when the non-customer suffers injuries "caused by [PSCo's] lines or equipment when contacted or interfered with by ladders, . . . trees, . . . or other objects not the property of [PSCo], which . . . are in close proximity to [PSCo's] lines and equipment, unless said lines and equipment are in a defective condition." In short, it precludes PSCo's liability to non-customers whose injuries result from 
 
37

 contact or interference with a power line-an especially unlikely scenario given the requirements of the High Voltage Safety Act that the majority explains in detail. Maj. op. ¶¶ 43-49; see, e.g., § 9-2.5-103(1), C.R.S. (2025) (requiring contracting parties that reasonably expect to work within ten feet of a high voltage line to contact the operating utility to arrange for safety measures). Moreover, Tariff Sheet R87 specifically confirms that PSCo is liable for such injuries when its power lines or equipment are "in a defective condition." Eliminating liability for specific, relatively unlikely injuries-while simultaneously preserving liability for certain negligent actions-does not evoke the concerns that have led some courts to deem the approval of tariff provisions unlawful exercises of a utility regulator's authority. 
 ¶75 To the extent the majority contends that PSCo's tariff provision is impermissible specifically because it applies to non-customers, Maj. op. ¶ 31, I note that courts in other jurisdictions have upheld tariffs limiting liability to non-customers. In US Airways, Inc. v. Qwest Corp., 361 P.3d 942, 944 (Ariz.Ct.App. 2015), for example, a contractor for a utility negligently performed work that interrupted services U.S. Airways received from a different utility. The court rejected U.S. Airways' assertion that the negligent utility's tariff provision limiting that utility's liability did not apply to non-customers, like the airline, because it concluded that the liability limitation was consistent with the need for "strictly 
 
38

 regulated" public utilities to "define[] and limit[]" their liability to ensure that they can "provide service at reasonable rates." Id. at 946-47. Similarly, in Trammell v. Western Union Telegraph Co., 129 Cal.Rptr. 361, 370 (Cal.Ct.App. 1976), the court held that a tariff provision limiting a telegraph company's liability applied not only to customer senders of a telegram, but also to non-customer recipients. The court reasoned that tariffs, and any limitations of liability they contain, "have the force and effect of law" and are "binding on the public generally." Id. at 368; see also Colich &Sons v. Pac. Bell, 244 Cal.Rptr. 714, 715, 718 (Cal.Ct.App. 1988) (holding that a tariff applied to limit a utility's liability to a non-customer that sought indemnification from the utility for damages it owed the utility's customers based on the utility's alleged negligence). 
 ¶76 US Airways, Trammell, and Colich support the proposition that tariffs may limit a utility's liability to non-customers in order to preserve the utility's ability to provide reliable service and to enforce its tariffs' legally binding effects. 
 ¶77 In sum, the PUC's approval of PSCo's tariff provision limiting PSCo's liability to non-customers-in a narrow and unlikely set of circumstances-is a reasonable exercise of the PUC's authority. 
 
39

 III. The Majority's Limitation on the PUC's Authority Compromises the PUC's Ability to Fulfill Its Constitutional Role in Utility Regulation 
 ¶78 Ratemaking is an "extraordinarily complex process." Brief for Edison Electric Institute as Amicus Curiae Supporting Petitioner at 12. It aims to balance a variety of often competing considerations, ranging from utilities' economic needs, to maintaining service reliability and affordability, to furthering a variety of disparate policy goals. Id. at 12-13. 
 ¶79 The framers of article XXV "recognized that the factfinding and policy choices involved in utility ratemaking require highly concentrated analysis of complex, detailed factual and statistical information." Mountain States Legal Found., 590 P.2d at 500 (Carrigan, J., dissenting). Accordingly, the PUC enjoys considerable discretion when exercising its "essential function . . . to ensure that all rate charges are fair and reasonable to ratepayers and the utility." Holcim U.S. Inc. v. Colo. Pub. Utils. Comm'n, 2025 CO 1, ¶ 25, 562 P.3d 55, 59 (quoting Pub. Serv. Co. of Colo. v. Pub. Utils. Comm'n, 26 P.3d 1198, 1204 (Colo. 2001)). This discretion is necessary for the PUC to achieve its goal of protecting the public interest in affordable electricity rates without compromising utilities' operational viability. See CF&I Steel, L.P., 949 P.2d at 584. 
 ¶80 The majority's holding fails to appreciate that decisions regarding liability limitations, "an inherent part of the rate," fall within the PUC's constitutionally 
 
40

 derived discretion to balance the competing interests that utilities regulation involves. Esteve Bros., 256 U.S. at 571; see also Romany M. Webb et al., Climate Risk in the Electricity Sector: Legal Obligations to Advance Climate Resilience Planning by Electric Utilities, 51 Env't L. 577, 660 (2021) ("Limitations on liability have generally been justified as in the public interest on the basis that, when their liability is defined and limited, electric utilities are better able to provide service at reasonable rates."). As a result, the majority's decision today compromises the PUC's ability to consider liability limitations as one of many tools available to help balance utilities' costs against their mandate to keep electricity prices affordable. Furthermore, today's decision invites future litigants to attempt to further constrain the PUC's authority in its area of special expertise by turning to the courts rather than the legislature to impose restrictions on that authority. The broad implications of the majority's decision today are disproportionate to the limited effects of the narrowly circumscribed tariff provision at issue here. 
 IV. Conclusion 
 ¶81 The plain language of Tariff Sheet R87 clearly precludes PSCo's liability to any person, including non-customers, under the circumstances of this case. However, the majority's narrow view of the PUC's authority over utilities regulation-particularly as applied to the carefully circumscribed tariff provision at issue here-disregards the breadth of the PUC's constitutionally delegated 
 
41

 power, fails to appreciate the scope of the tariff provision, and threatens to undermine the PUC's discretion over ratemaking. I cannot support this result. 
 ¶82 Article XXV of the Colorado Constitution directly delegates plenary authority over utilities regulation to the PUC. Any restriction on the PUC's plenary authority must come from the General Assembly-not this court. Thus far, the legislature has not restricted the PUC's ability to approve tariff provisions limiting a utility's liability to non-customers-and the majority points to no statute imposing such a restriction. Accordingly, the PUC has the authority to do so. 
 ¶83 Notably, PSCo's tariff provision does not grant PSCo broad immunity for any third person's injuries caused by any negligent act PSCo may perform. Rather, it limits PSCo's liability to non-customers under highly specific (and relatively unlikely) circumstances. The narrow scope of PSCo's tariff provision distinguishes it from those that other courts have deemed to exceed a regulatory body's authority. Thus, I see no reason to apply those courts' concerns to the provision before us. 
 ¶84 Finally, limiting the PUC's authority as the majority does today imposes an unwarranted restriction on the PUC's discretion to make the complex decisions that utilities regulation requires. And it invites future litigation over tariff provisions that the PUC has approved after careful analysis of a variety of 
 
42

 competing factors. Article XXV of the Colorado Constitution makes clear that such analyses are best left in the PUC's expert hands. 
 ¶85 I respectfully dissent. 
 --------- 
 Notes: 
 [*]This opinion was originally assigned to another Justice but was reassigned to Justice Gabriel on September 11, 2025. 
 [1] Specifically, we granted certiorari to review the following four issues, the first two of which relate to whether the tariff's limitation of liability provision applies to bar Cuevas's claims: 
 

 1. Whether the court of appeals erred in holding that
 a provision in a utility's tariff purporting to limit the
 utility's liability only applies to customers of the
 utility.
 

 

 2. Whether the court of appeals erred in holding that
 the General Assembly had not expressly delegated authority to
 the Public Utilities Commission to approve a tariff limiting
 tort liability in derogation of common law.
 

 

 3. Whether the court of appeals erred in holding that
 Respondent was not a "person" subject to the
 notification requirements of the High Voltage Safety Act,
 § 9-2.5-102(1), C.R.S. (2023).
 

 
 4. Whether the court of appeals erred in interpreting
 C.R.S.
 
 § 9-2.5-104(2) such that it renders the words "results in," "caused by the contact," and "due to the contact" superfluous. 
 [1] Because I would hold that PSCo's tariff precludes it from incurring any liability to Cuevas in the first place, I need not reach any issues concerning the High Voltage Safety Act. See § 9-2.5-104(2), C.R.S. (2025) (requiring that violators of the High Voltage Safety Act indemnify the owner or operator of an overhead line "for the liability incurred by the owner or operator"). Accordingly, I would reverse the judgment of the division below. 
 [2] Article XXV was added to the Colorado Constitution in 1954 by referendum. Ch. 226, sec. 1, 1955 Colo. Sess. Laws 693, 693-94. 
 [3] Article XXV's direct grant of authority to the PUC was not unique at the time of its enactment. Prior to 1996, the New Mexico Constitution directly vested in the Corporation Commission the "power" and "duty of fixing, determining, supervising, regulating and controlling all charges and rates of . . . transportation and transmission companies." N.M. Const. art. XI, § 7 (1995); H. J. Res. 16, 42d Leg., 2d Reg. Sess., 1996 N.M. Laws 1080, 1080-81 (repealing this and other sections of article XI). The New Mexico Supreme Court long recognized that this provision represented "not a legislative grant," but "a delegation of power and duty by the [constitution" that rendered the Corporation Commission's power over utilities regulation "an attribute of sovereignty." San Juan Coal & Coke Co. v. Santa Fe, San Juan & N. Ry. Co., 2 P.2d 305, 307 (N.M. 1931); see also Mountain States Tel. & Tel. Co. v. N.M. State Corp. Comm'n, 563 P.2d 588, 594 (N.M. 1977) (describing the provision as a "broad grant of constitutional authority to the [Corporation] Commission"). Consistent with this interpretation, the New Mexico Court of Appeals held that the Corporation Commission's constitutional authority included the power to approve a tariff provision that limited a utility's liability for simple negligence. Coachlight Las Cruces, Ltd. v. Mountain Bell Tel. Co., 664 P.2d 994, 999-1000 (N.M. Ct. App. 1983). New Mexico's PUC analog no longer commands the same constitutional authority; article XI was amended in 1996 to replace the Corporation Commission's broad, constitutionally derived authority with an instruction to the legislature to delegate authority over utilities regulation to a public regulation commission. 1996 N.M. Laws at 1081. Notably, Colorado has not made a similar change to article XXV. 
 [4] To the extent the majority's conclusion rests on its assertion that section 40-3-102, C.R.S. (2025), likewise does not affirmatively grant the PUC authority to limit a utility's liability to non-customers, it again misunderstands the plenary authority over utilities regulation that article XXV confers on the PUC. See, e.g., In re Interrogatories on Senate Bill 21-247, 2021 CO 37, ¶ 41, 488 P.3d 1008, 1020 (recognizing that the PUC's power derives exclusively from the constitutional amendment creating it and not from the legislature's general authority). Importantly, the General Assembly has not acted to restrict that plenary authority by precluding the PUC - in section 40-3-102 or elsewhere - from limiting a utility's liability to non-customers. 
 ---------